MR. AND MRS. H. R. DIXON, d/b/a H. R. DIXON INSURANCE AGENCY (Aetna Casualty & Surety Company), v. BARBARA SUE PICKLE, by Next Friend.

MR. AND MRS. H. R. DIXON, d/b/a H. R. DIXON INSURANCE AGENCY (Aetna Casualty & Surety Company), v. ROBERT PICKLE. —327 S. W. (2d) 50.

Eastern Section.   July 15, 1959.

Certiorari Denied by Supreme Court September 3, 1959.

Clyde W. Key, Knoxville, for plaintiff in error.

Ogle & Ogle, Sevierville, for defendants in error.

HOWARD, J. In these consolidated actions The Aetna Casualty & Surety Company of Hartford, Connecticut, has appealed from two judgments based on jury verdicts in favor of Barbara Sue Pickle, a minor, and her father, Robert Pickle.

As we view the record, the primary and uncontested facts out of which the actions arose are as follows:

On February 15, 1956, one William K. Heater, a student living on campus of Tennessee Wesleyan College in Athens, Tennessee, made written application to Hubert R. Dixon, d/b/a Hubert R. Dixon Insurance Agency, local agent for the above insurance company, for a policy

of automobile liability insurance on his car, paying said agency a portion of the premium for which he was given a receipt. The agency had no authority to issue policies, but was authorized to take applications and to temporarily bind the company until the application could be transmitted to the branch office in Atlanta, Georgia, for final action. On receiving the application on the above date, the agent, as he was authorized to do, told Heater in substance, "You are covered from this moment."

On the following day, February 17th, Heater loaned his automobile to a fellow student, Grace Coates, who subsequently wrecked it, injuring her roommate, Barbara Sue Pickle, who was a guest passenger at the time. It is conceded that Grace Coates was in no way related to Heater, who promptly notified the agent of the accident.

Thereafter, on February 29, 1956, the defendant issued to Heater a policy of liability insurance which not only contained all the provisions of a standard policy, but in addition thereto contained the following "student risk endorsement":

"It is agreed that such insurance as is afforded by the policy does not apply:

"1. With respect to bodily injury liability and property damage liability, to any person as an insured who is enrolled as a student at any school, college, or other educational or vocational institution, except the named insured or a member of his or her family. The 'definition of insured' insuring agreement is amended accordingly.

"2. With respect to automobile payments, while any person excluded in (1) above is operating or in control of the automobile except with respect to bodily injury to or death of the named insured or a member of his or her family."

As result of the accident both Barbara Sue Pickle and her father, Robert Pickle, sued Heater and Grace Coates for damages. Upon the trial of these cases the Company successfully defended the suits against Heater, and the cases against him were dismissed, but judgments were returned for both plaintiffs against Grace Coates, whom the company refused to defend, for the following amounts: Barbara Sue Pickle, $2,000, and her father, Robert Pickle, $1,000. Subsequently, the plaintiffs instituted these actions against the Insurance Company and its agents, Mr. and Mrs. Hubert R. Dixon, d/b/a Hubert R. Dixon Insurance Agency, to collect these judgments.

Plaintiffs' declarations allege in substance that at the time Heater made application for liability insurance, he was acting in good faith, and that he has fully complied with all the terms of said binder or temporary agreement; that on being told by the defendant company or its agent that "You are covered from this moment," no reference was made to any student risk endorsement or restrictive clause relative to drivers, and not having been informed of these restrictions limiting the Company's liability, he would not be bound by them, and plaintiffs sued to recover the amount of said judgments and demanded "a jury to try the issues joined."

To the declarations the defendants filed special pleas in which it was averred, inter alia, that Mr. and Mrs.

Hubert R. Dixon, d/b/a Hubert R. Dixon Insurance Agency, to whom Heater applied for insurance, had no authority to approve applications or issue policies of insurance, their authority being limited to the acceptance of applications, "issuance of temporary binders," and the transmission of the applications to the branch office in Atlanta, Georgia, for final action; that at the time of receipt of Heater's application, and for a long time prior thereto, it had been the rule and practice of the Company upon accepting an application of a student for liability insurance, to incorporate in the policy the above quoted "student risk endorsement"; that by the provisions of this endorsement the Company was not only under no obligation to defend the suits against Grace Coates, but that no liability attached under the policy.

To the above special pleas the plaintiffs filed a replication averring that the defendant company was estopped from denying that Grace Coates had complete coverage under the policy, by reason of having recognized coverage on March 16, 1956, by filing with the Financial Responsibility Division, Department of Safety of the State of Tennessee, Form SR—21, stating that said policy of insurance covered both the "owner" and "operator" of the automobile.

To the replication the defendant company filed rejoinder alleging that Form SR—21 had been filed inadvertently through error; that upon discovering the error the defendant filed an amended form on February 5, 1958, correctly stating that the policy was neither applicable to nor covered Grace Coates, and that she had previously been notified to this effect by registered

letter on March 23, 1956, which was long before the plaintiffs filed suits against her.

Upon the issues joined the cases proceeded to trial.

At the conclusion of all the proof, a motion for peremptory instructions made on behalf of all the defendants was sustained as to Mr. and Mrs. Hubert R. Dixon, d/b/a Hubert R. Dixon Insurance Agency, but overruled as to the Insurance Company, against which the jury returned verdicts for both plaintiffs for the amounts sued for, and judgments were accordingly entered. Thereafter the defendant's motions for a new trial having been seasonably filed and overruled, this appeal resulted.

On behalf of the Insurance Company it is contended that verdicts in each case should have been directed for this defendant at the conclusion of all the evidence, pursuant to the motion then made by the defendant, because there was no evidence on which verdicts for plaintiffs could be based, only a question of law being involved.

According to the defendant, the Dixon Insurance Agency was not furnished with a supply of policy forms and had no authority to execute and issue policies of insurance, but was required to transmit applications therefor to defendant's branch office in Atlanta, Georgia, where they were reviewed by an underwriter. The underwriter, William H. Wright, who reviewed Heater's application, testified that since March 1951 the defendant had had in effect Bulletin No. 33 as a guide when considering applications of students for automobile liability insurance. This bulletin was filed in evidence as Exhibit 9, and the pertinent parts thereof read as follows:

"Student Risks.

"The practice of permitting students, many times of immature age, to use automobiles while attending school or college, continues to create a serious underwriting problem. This is particularly true in those instances where the student is away from home and beyond immediate parental control. It is a well known fact that past unfavorable experience has forced many companies to place this classification on their prohibited lists.

\*   \*   \*   \*   \*   \*

"Coverage and Limits of Liability. The carelessness and irresponsibility of many students can create serious fire and theft hazards. Collision insurance, if acceptable, should not be considered other than on a deductible basis. Bodily injury and property damage liability should be held down to moderate limits.

" 'Student Risk' Endorsement. It is a common practice for insureds of this class to permit the operation of their machines by fellow students whose identity cannot be pre-determined and who might not measure up to our underwriting standards. Under such circumstances an automobile policy would ordinarily inure to the benefit of those fellow students by reason of its 'omnibus coverage'. To guard against this added exposure, signed 'Student Risk' type-written endorsement (Code E—488) should be attached to all policies. In substance this endorsement provides that such policies will not cover the personal interests of fellow students, i. e.: those 'enrolled as students in any school, college or other educational or vocational institution'. For purposes of

classification, the word 'enrolled' as used in the Student Risk Endorsement, is intended to include the full time when individuals are recorded as students in any educational institutions, holidays and vacations not excepted. In other words, an 'enrolled' student should be considered in the sense of one having no other principal occupation."

Wright further testified that when a student lived on the campus, as did Heater, the underwriter had no alternative but to either reject the application outright or attach the "Student Risk Endorsement" to the policy, and that this had been the rule of the Company since Bulletin 33 was issued in 1951. He admitted, however, that the Dixon Insurance Agency had never been informed of either the Bulletin or of the "Student Risk Endorsement," though the Agency was located in a college town where students lived on the campus.

On the other hand, the plaintiffs' proof was uncontradicted that neither the agent nor the insured, Heater, had any knowledge whatsoever of the provisions of Bulletin 33 or of the "Student Risk Endorsement." Nor was there any proof that the Student Risk Endorsement had ever been written into other policies issued by the defendant through the Dixon Insurance Agency, whose Agency Agreement, it is admitted, authorized said Agency to temporarily bind the defendant until the application could be transmitted to the Atlanta office for action. Nor does there appear to be any material difference in the general provisions of the policy issued by the defendant than like policies issued by other companies qualified to do business in the State of Tennessee, all of which contain a standard provision known as the Omnibus

Clause. This clause in the defendant's policy specifically provides, that "The word insured includes the named insured * * * and also includes any person while using the automobile * * * provided the actual use of the automobile is by the named insured or such spouse or with the permission of either."

The law applicable to temporary contracts of insurance is stated in 44 C. J. S. Insurance sec. 230, as follows:

"An agent possessing authority to bind the company by contracts of insurance has authority to bind it by a preliminary or temporary contract of insurance, * * * An agreement of an agent that the insurance is effective from the date of the application is binding on the company where it is within the apparent authority of the agent, but not where his lack of authority in this respect is brought to the knowledge of the applicant."

"A valid temporary or preliminary contract of present insurance may be made orally, or it may be partly in parol or partly in writing, or, unless provided otherwise by statute, it may be, and frequently is, evidenced by a binder or binding slip, a covering note, a binding receipt, a binding memorandum entered on the books of the agent, or other memoranda. The fact that a standard form of policy has been adopted by statute does not render invalid a preliminary or temporary contract of present insurance resting in parol of evidenced by a binder.

* * * * * *

"Sometimes express language is employed to make the general policy of the company, or the

standard policy of a certain state, a part of the preliminary or temporary contract of present insurance. Even where such express language is not employed, the contract is construed as being subject to the terms and conditions of the policy to be issued or of the policy ordinarily used by the company, *or, if there is a standard policy in the jurisdiction, according to the terms and conditions of that policy, and it is presumed that the parties contemplated such a policy containing such conditions and limitations.* However, provisions in a policy, issued and tendered but not accepted after loss, cannot be read into an executed contract of temporary insurance, where both the contract and the application are silent as to such provisions and the matter covered thereby. Temporary contracts which do not specify the premium to be paid are construed as implying the usual and customary rate. *The intention of the parties is the fundamental issue in interpreting a binding receipt issued by insurer at the time of the application for the policy, and where such a receipt is clearly established as a temporary contract of insurance it is favorably regarded by the courts. Where it is ambiguous, it should be construed against the insurance company."* Pp. 959, 960. (Emphasis supplied.)

In the instant case, it being admitted that the Agency had authority to make temporary contracts of insurance, and the restrictions relied upon by the defendant not having been brought to the attention of either the Agency or the insured, it appears to us that there was material evidence on which verdicts by the jury could be based. From the evidence the jury could reasonably conclude that the parties contemplated that the policy

when issued would contain such conditions and limitations as appeared in policies which had theretofore been issued by the defendant, through the Dixon Insurance Agency.

Furthermore, by T. C. A. sec. 56-705, all persons soliciting insurance, excepting fire insurance brokers, shall in all matters relating to the application and policy be regarded as agents of the company and not of the insured. See Industrial Life & Health Ins. Co. v. Trinkle, 30 Tenn. App. 243, 204 S. W. (2d) 827.

In Commercial Standard Ins. Co. v. Paul, 35 Tenn. App. 394, 245 S. W. (2d) 775, 779, this Court said:

"In matters pertaining to insurance the insured deals exclusively with the insurer's agent. The insurer cannot deal with its patrons in any other way. Justice and law therefore require that the insurer shall be held to sanction what the agent agrees to and upon which the insured relies, and knowledge of matters affecting the risk of conditions of the policy acquired by the agent in soliciting the insurance is the knowledge of the insurer. Franklin v. Fireman's Ins. Co. 4 Tenn. App. 688; Phillips v. North River Ins. Co., 14 Tenn. App. 356; Hale v. Sovereign Camp W. O. W., 143 Tenn. 555, 226 S. W. 1045; American Nat. Ins. Co. v. McPhetridge, 28 Tenn. App. 145, 187 S. W. (2d) 640; Industrial Life & Health Ins. Co. v. Trinkle, 185 Tenn. 434, 206 S. W. (2d) 414."

It results that we find no merit in the appeal, and for reasons indicated, the judgments are affirmed at plaintiff-in-error's cost.

McAmis, P. J., and Hale, J., concur.