**Clyde BRITT and Fred Sells, Plaintiffs,**
v.
**The FIDELITY AND CASUALTY COMPANY OF NEW YORK, Defendant.**
**Civ. A. No. 1742.**

United States District Court
E. D. Tennessee,
Northeastern Division.

Sept. 30, 1964.

Supplemental Opinion and Order
Oct. 27, 1964.

D. M. Guinn, Johnson City, for plaintiffs.

J. R. Simmonds, Johnson City, C. T. Herndon III and Harry Fortune, Johnson City of counsel, for defendant.

NEESE, District Judge.

This action was removed from a state court of equity, 28 U.S.C. §§ 1332 and 1441, and tried by the Court without a jury on August 18, 1964. The requisite facts of citizenship and the jurisdictional amount are present.

The plaintiff Mr. Britt hauls materials for construction contractors.[1] His wife, Mrs. Yuki Britt, handled his truck insurance matters through the Frank Parsley general insurance agency in Erwin, Tennessee, where Mrs. Britt resided during an earlier marriage.[2] However, the Parsley agency first insured one of Mr. Britt's trucks effective April 1, 1958.

Until the firm's operators ceased business and left the Johnson City area, Mr. Britt utilized his 1955 Chevrolet truck in hauling stone for Conley Trucking Company which, in turn, was engaging in hauling operations for Mr. Hobart G. Green.[3] This truck, a two-ton dump truck, was insured by the defendant, through the Parsley agency, on July 31, 1959. The policy included a so-called "truckmen's local" endorsement extending coverage on the truck only while Mr. Britt was engaged in hauling operations for Conley Trucking Company and within a radius of 50 miles of Johnson City, Tennessee. Such a limitation is proper. Buckeye Union Casualty Co. v. Bell, C. A.7th (1957), 249 F.2d 211, 212–215, certiorari denied (1958), 356 U.S. 920, 78 S.Ct. 704, 2 L.Ed.2d 716; Brown v. Tennessee Auto Ins. Co. (1951), 192 Tenn. 60, 61–64, 237 S.W.2d 553, 554–555 [4, 5]; Standard Life Insurance Company v. Hughes (1958), 203 Tenn. 636, 315 S. W.2d 239, 243 [2].

Mr. Britt subsequently made an arrangement with Gardner Equipment Company to haul asphalt from their plants located between the Kingsport-Johnson City and Bristol-Johnson City highways to points in the vicinity. He bought a new 1961 two-ton Chevrolet dump truck for this purpose, and he hauled for no one else and at no other place after acquiring the new truck until the truck was destroyed in an accident, infra.

Mrs. Britt took the bill of sale on the new truck to the Parsley agency and talked with Mrs. Virginia Proctor, Mr. Parsley's only assistant in the agency, with whom Mrs. Britt had done business previously. Mrs. Britt testified that she advised Mrs. Proctor that Mr. Britt " * * * is working with Gardner Equipment Company now * * * " and that Mrs. Proctor replied she would " * * * take care of it. * * * " Mrs. Proctor disputes this, testifying that she merely asked Mrs. Britt " * * what the truck was and its capacity * * * ", and that Mrs. Britt told her nothing more. Effective May 29, 1961, the new truck was added to the policy of July 31, 1959 by endorsement, and a certificate of insurance was forwarded by the agency to Conley Trucking Company. Mr. Britt paid an additional premium of $20.72 for the coverage of his additional truck, and on July 31, 1961, the aforesaid policy, as amended by endorsement, was renewed for a term of one year thereafter. Mr. Britt had paid all the installments on the annual premium for the renewed policy he was due to pay on August 23, 1961.

On that date the new truck was involved in an accident while being operated by Mr. Leon H. Shell for Mr. Britt at a point within 50 miles of Johnson City, Tennessee, and at a time when the destination of the truck was within that radius of said city. The plaintiff Fred Sells was riding in Mr. Britt's truck at that time and place and was injured in the accident.

1. Mr. Britt has severe speech and hearing handicaps. His wife, of Japanese origin, served as interpreter of his testimony at the trial.

2. Mr. and Mrs. Britt were married in January, 1960.

3. Another hauler succeeded Conley in hauling for Mr. Green.

Mrs. Britt reported the accident to the Parsley agency by telephone; two weeks after the accident, Mr. Jason J. Clark, an adjuster for the defendant, called to see her. She advised Mr. Clark on that occasion that her husband was hauling for Gardner Equipment Company at the time and place of the accident, and Mr. Clark responded that the defendant's policy " * * * didn't cover our driver but only covered the other fellow. * * * " Mr. Clark continued to handle the adjustment of the claim for several months and, at one time, advised the state authorities that Mr. Britt had insurance coverage for his liability arising from the accident.

In May, 1962, the plaintiff Mr. Sells commenced a suit for damages by reason of his aforesaid injuries against the plaintiff Mr. Britt and his driver Mr. Shell in the Law Court at Johnson City, Tennessee. The amount of Mr. Sells' claim was $175,000, which was in excess of the policy limits, and Mr. Britt engaged Nelson Swan, Esq., his personal attorney, to represent him in the action.

The suit papers were forwarded by Mr. Britt to the Frank Parsley Agency and eventually reached the adjuster Mr. Clark. For the first time, Mr. Clark learned of the truckman's local endorsement. By letter under date of June 12, 1962, the defendant notified the plaintiff Mr. Britt that it was denying coverage to him on the grounds that the policy limited coverage to Mr. Britt's hauling operations exclusively for the Conley Trucking Company *and to accidents occurring within a fifty-mile radius of Johnson City, Tennessee.*[4]

As only a period of a few weeks remained before the action against Mr. Britt was set for trial, he engaged Mr. Swan to carry the full responsibility of defending the action against him and his driver. The action was eventually tried,

resulting in a jury verdict against Messrs. Britt and Shell for $15,000.00 which was within the limits of the pertinent policy. No part of that judgment has been satisfied, and Mr. Swan has been paid nothing for his services.[5]

■ The law on this subject in Tennessee is very clear: anyone buying insurance through an agent may rely on the words and acts of such agent as being the words and acts of the insuror. Moore v. New Amsterdam Cas. Ins. Co., D.C. Tenn. (1961), 199 F.Supp. 941, 946 [7]. T.C.A. section 56–705 provides, *inter alia,* that any person who shall solicit an application for insurance shall, in all matters relating to such application and the policy issued in consequence thereof, be regarded as an agent of the company issuing the policy, and not as the agent of the insured.

"In matters pertaining to insurance the insured deals exclusively with the insurer's agent. The insurer cannot deal with its patrons in any other way. Justice and law therefore require that the insurer shall be held to sanction what the agent agrees to and upon which the insured relies, * * * ". Commercial Standard Ins. Co. v. Paul, C.A.Tenn. (1951), 35 Tenn.App. 394, 245 S.W.2d 775, 779, quoted in Dixon v. Pickle, C.A. Tenn. (1959), 46 Tenn.App. 223, 327 S. W.2d 50.

It was the obvious intention of Mr. Britt that the defendant would provide him with the same type of coverage in hauling for Gardner Equipment Company that it had provided him in hauling for Conley Trucking Company. As he was no longer hauling for Conley, it would have availed Mr. Britt nothing to have paid a premium for a policy affording him no covering protection whatever. It is not contended by the defendant that its risk was increased merely because Mr. Britt was hauling the same type of

4. Nowhere in this record has it ever appeared that anyone else contended that the accident was not within fifty miles of Johnson City.

5. The amount of the court costs in this action was not shown. Mr. Swan testified that a fair and reasonable fee for his services is $2,500. The Court finds such services for the insured (as opposed to personal services to Mr. Britt) on his attorney's part to be fairly and reasonably worth $1,050.00.

materials in the same locality for Gardner Equipment Company rather than for Conley Trucking Company. There is no indication that the defendant would not have issued the endorsement on the new truck had it known that Mr. Britt was hauling for Gardner rather than Conley. Thus, it is reasonably inferred that it was also the intention of the defendant that Mr. Britt's new truck be covered while he was hauling within a fifty-mile radius of Johnson City, Tennessee, for only one construction contractor.

All that remained for the coverage Mr. Britt intended to receive and the defendant apparently intended to provide to be effective was the clerical substitution of the words "Gardner Equipment" for "Conley Trucking" on the truckman's local endorsement form. There is no contention that the Britts concealed this change in his working agreement from Conley to Gardner. Indeed, Mrs. Britt testified positively that she advised Mrs. Proctor of the change. Mrs. Proctor concedes the possibility of errors in the handling of the Britt account. She also admits that she did not inquire of Mrs. Britt whether her husband was continuing to haul for Conley when the new truck was ostensibly added to the coverage.

The credibility of neither Mrs. Britt nor Mrs. Proctor is in issue. Both are presumed to have spoken the truth on the witness stand. And while the credibility of no witness testifying on this trial is questioned, the weight the Court is to accord the evidence is the determining factor in ascertaining the truth of the matter.

There is an abundance of evidence of lax handling of the defendant's business in this record on the part of the agent's employee and its claims adjuster, i. e.: (a) Although Mrs. Britt notified Mrs. Proctor of her husband's change of address shortly after the marriage of the Britts in January, 1960, defendant's mail was addressed to Mr. Britt at his old address in cancelling the policy (in 1962) long after the accident; (b) Mr. Britt received a check for returned premium following the accident which the Parsley agency personnel had neglected to sign; (c) Its adjuster did not become informed concerning the inclusion on the policy of the "Conley endorsement" until after he had spent months in investigating the claim and after the suit had been filed against Mr. Britt, et al.: and (d) The adjuster was admittedly informed by Mrs. Britt within a few days after the accident that Mr. Britt had been hauling for Gardner at the time of the accident. These clerical and procedural errors on the part of those representing the defendant's interests do little to counteract the preponderance of the evidence created by the positive testimony of Mrs. Britt.

The Court, therefore, finds by a preponderance of the evidence that Mr. Britt, in buying liability insurance coverage on his new truck through the defendant's agent, specified, through his wife, that the truck would be used only for hauling for Gardner Equipment Company within a fifty-mile radius of Johnson City, Tennessee; that Mr. Britt relied on the defendant's agent's employee Mrs. Proctor to " * * * take care of * * *" the issuance of an endorsement to that effect; that the defendant, accordingly, sanctioned what Mrs. Proctor agreed to and on which Mr. Britt relied in this regard; and that the policy, as to both of Mr. Britt's two-ton dump trucks, was effectively changed so that they might be used by him in hauling within those mileage limits for Gardner Equipment Company.

The Court concludes that the defendant is estopped to rely on condition 20 of the policy, requiring written endorsement of the policy to effectuate such modification. Estoppel is not predicated on contract, but on the principle " * * * that, where one party has by his representations or by his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he [will] not in a court of justice be permitted to avail himself of that advantage. * * *" Union Mut. Ins. Co. v.

Wilkinson (1872), 13 Wall. (80 U.S.) 222, 20 L.Ed. 617, 622.

The defendant, through the conduct of its agent's employee, Mrs. Proctor, induced Mr. Britt to pay an additional premium for the inclusion of liability coverage for his new and additional truck after receipt of information that Mr. Britt was then hauling for Gardner instead of Conley as the written policy stated. The defendant knew at the time it issued the endorsement that condition 20 was included in the policy to which such endorsement would be attached and become a part; therefore, the defendant gained an advantage which it is against equity and good conscience for the defendant now to assert. Under these circumstances, the policy was worthless after Mr. Britt changed from hauling for Conley to hauling for Gardner; and under the Court's finding of facts, the defendant knew that it was worthless, because of the condition 20. The presumption naturally obtains that, if neither of Mr. Britt's trucks had been involved in an accident during the term of the amended policy, no objection would have been made by the defendant, and the entire premium would have been retained by the defendant.

■ It is not claimed that Mr. or Mrs. Britt fraudulently concealed or misrepresented any fact, or that either of them intended any fraud upon the defendant. To permit this defense now, after having found the facts as the Court has, would be to hold that the defendant purposely perpetuated a fraud on Mr. Britt, accepted his money for the premium, and continued in force a policy that it had no intention whatever of paying in case of Mr. Britt's liability. That, of course, was not the purpose and intent of the defendant. Cf. Hartford Fire Ins. Co. v. Nance, C.C.A.6th (1926), 12 F.2d 575, at page 579 (opinion of the late Circuit Judge Donahue, concurring with the majority's result but dissenting from the rule of law announced by the majority). And the Court finds and concludes that the defendant was not guilty of bad faith so as to entitle the plaintiffs to the statutory penalty of 25%.

The defendant maintains that the Court erred in admitting parol evidence to prove a change in a written contract otherwise than in writing, relying principally on Hartford Fire Ins. Co. v. Nance, supra, from the Sixth Circuit. The majority of the appellate court for this Circuit did apply general law in determining the question on estoppel of a policyholder in that decision. However, this was eleven years before the landmark decision of the Supreme Court of the United States in Erie R. Co. v. Tompkins (1937), 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, overruling the intermediate appellate court which had held that " * * * upon questions of general law the federal courts are free * * * to exercise their independent judgment as to what the law is * * "; holding that there is no federal common law, and further holding that it is the duty of federal courts to follow state decisions in matters of general law.

■ This Court is of the opinion that it is unnecessary that a change or modification of the insurance contract between these parties have been in writing, even though the original policy contained an express provision that modifications of the written contract could not be made in any other manner. " * * * A written contract is of no higher dignity than an oral one except under the statute of frauds, and there can be no more force in an agreement in writing not to agree by parol than in a parol one not to agree in writing and every such agreement is ended by the new one which contradicts it. * * *" Grand Trunk Western R. Co. v. H. W. Nelson Co., C. C.A.6th (1941), 116 F.2d 823, 824 [19]; cf. Commercial Standard Ins. Co. v. Paul, supra, quoted in Dixon v. Pickle, supra.

It is the consequent opinion of this Court that the plaintiffs are entitled to recover an aggregate of $16,050 from the defendant, and judgment will be so entered by the clerk. Rule 58(1), Federal Rules of Civil Procedure.

## SUPPLEMENTAL OPINION AND ORDER

The plaintiffs, by proper motion, direct the Court's attention to their entitlement under Tennessee law to interest on the judgment rendered in favor of Mr. Sells and against Mr. Britt in the state action adverted to in the Court's memorandum opinion of September 30, 1964. T. C. A. section 47–1610 (now T. C. A. section 47–14–110); Nunnellee v. Morton (1811), 3 Tenn. 21. The said motion, in this Court's opinion, is well taken and hereby is

Granted.

The clerk, therefore, will forthwith prepare, sign and enter an amended judgment giving the plaintiffs judgment against the defendant for the aggregate sum of $17,083.79, in accordance with the Court's memoranda of September 30, 1964 and of this date.