STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, Inc., Defendant-Appellant, v. CECIL H. LLOYD and wife, HETTIE MOYZELL LLOYD, Complainant-Appellees, Walter Lee d/b/a Walter Lee Insurance Agency, Defendant-Appellees.
—393 S.W.(2d) 17.

Western Section. January 29, 1965.

Certiorari Denied by Supreme Court August 2, 1965.

588

Hunter Cochran and Melvin Fleischer, Memphis, for State Automobile Mut. Ins. Co., Inc.

Alex J. Migliara, Memphis, for Cecil H. Lloyd and Hettie Moyzell Lloyd.

McDonald, Kuhn, McDonald, Crenshaw & Smith, Memphis, for Walter Lee d/b/a Walter Lee Ins. Agency.

AVERY, P.J. (W.S.). Essentially this is an original and amended bill in which the original complainant, Cecil H. Lloyd and wife, Hettie Moyzell Lloyd brought an original suit against Walter Lee and Walter Lee Insurance Agency seeking what was determined or denominated a "Bill for Specific Performance and Damages from Breach of Contract". Later this original bill was amended so as to bring into the Court the State Automobile Mutual Insurance Company as a defendant. This amendment was by consent of the parties.

Specifically the amended bill states that Walter Lee, d/b/a Walter Lee Insurance Agency of Memphis, Ten-

nessee, was an insurance agent, and as such represented and was the agent for State Automobile Mutual Insurance Company with authority to solicit insurance contracts, take applications, collect premiums, countersign and issue contracts of insurance et cetera.

The allegations of the bill as amended, are to the effect that Walter Lee, as such insurance agent, had formerly procured motor vehicle insurance for these particular complainants, one of which was a 1960 Dodge Dart, such prior insurance was with a different company than the said State Automobile Mutual Insurance Company, and that on the expiration of the contract with that company it decided not to renew the insurance on these particular automobiles of the complainants, at which time the said Walter Lee, as agent, procured a "combination automobile policy of liability and collision, physical damage and indemnity insurance coverage", which set out therein a liability coverage of $10,000 for each person for bodily injury, with a total maximum of $20,000 for injuries in any one occurrence, and for $5,000 property damages and less a $50.00 deductible for the collision coverage on said automobile; that this carriage was with the Textile Insurance Company of High Point, North Carolina, issued for a period of one year, to February 25, 1962, and which was FA 49987.

On March 21, 1961, complainants received notice of the cancellation of this said Textile Insurance Company policy, stating that said insurance company would cancel said policy as of the 1st day of April, 1961.

This left an unused amount of the premium paid in respect to that policy of about $54.08. The original bill then charges that at about that time Hettie Moyzell Lloyd, who was the sole owner of this Dodge Dart auto-

mobile, again contacted the defendant, Walter Lee d/b/a Walter Lee Insurance Agency, and first discussed with him, by telephone, this cancellation and was assured by him that he would immediately procure binders of insurance for that automobile, together with their other autombiles, by the application of this $54.08 which he then had or would have in his possession, being balance remaining from the policy cancellation by the other insurance company; that this agreement was satisfactory, and said Walter Lee was so notified. It is also alleged in the petition that the coverage to be placed upon the motor vehicles at that time was the same as theretofore, in amount and categories, as was carried by the other insurance companies which had cancelled the former policy contracts.

It is further alleged that in four or five days after that agreement was made Mrs. Lloyd went by the agency of the said defendant Lee and there at that time found no new binder had been obtained; that while she sat there in his office Mr. Lee called the defendant, State Automobile Mutual Insurance Company with respect to putting a binder of insurance on those vehicles until all necessary policy or policies could be obtained; that she heard him talking on the telephone and there it was agreed that the company would put that binder on and advised him to state to her that said binders were issued on the motor vehicles, one of which was the particular Dodge Dart.

They further allege that while this binder was in full force and effect, they paid out three property damage claims growing out of a collision covered by that insurance binder, in the amount of $652.80; that they have paid out $83.00 as a bodily injury claim; that they have sustained a physical damage collision loss in the amount

of $1,600 to their Dodge Dart automobile; that they have sustained other losses and damages to the amount of $1,000 and that there is still outstanding certain potential bodily injury claims against them. They then pray for specific performance on the part of the insurance company and this agent by the issuance and delivery to them of the insurance policy contract represented by the binder. They allege that they should be awarded damage in the amount of $3,935.80 for the reimbursement by them of money necessarily expended for which they should be indemnified; that the defendants be required to post adequate bond etc. with the State so they could use their motor vehicles, and finally for further and general relief.

Prior to the amendment to the bill, Walter Lee, d/b/a Walter Lee Insurance Agency, filed an answer in which he admitted that in 1960 he contracted to provide insurance upon the particular automobile in question, but he denies any allegation in the bill that he ever attempted to renew but one insurance contract, simply averring that he had said he would try to procure insurance in some of the companies, but that while she was there at his office he did contact the defendant, State Mutual Automobile Insurance Company and obtained this binder, and that she agreed that the money in his hands would be applied to the payment of that particular contract or policy to be issued by the State Mutual Automobile Insurance Company under that binder. In other words, that $54.08 was to be used to purchase the policy from State Mutual Automobile Insurance Company, if the policy was issued, and that he would bill her when that policy was issued, for the remainder of premium. He then alleges that no binder was issued except for the purpose of permitting the State Mutual Automobile Insurance Company to

investigate the risk and decide whether or not the policy would be issued. He then sets forth a series of dates and admissions which range in accord with the fact that the Textile Insurance Company had given notice that it would cancel the policy on the 1st day of April 1961. He then states what he says happened and denies any liability on his part.

State Automobile Mutual Insurance Company filed answer and cross-bill, admitting after the bill was filed, it did issue this binder in a telephone conversation with its agent, Walter Lee, d/b/a et cetera, but that this was only a verbal binder and that on April 13, 1961 it wrote Mr. Lee a letter in which he was advised that the binder was cancelled upon receipt of that letter; that the binder having been cancelled, it was the responsibility of Mr. Lee to notify the assured and that he didn't do it. This cross-bill with sufficient averments, states that the agent, Mr. Lee, is liable to it and if judgment is rendered against it, that they have judgment-over against Mr. Lee. They steadfastly deny, however, there is any liability on the part of the company with respect to the binder.

So in numerical order we have these events: (1st) on April 5 this oral binder was granted. No receipt was given, no written binder was given of any kind or character. (2nd) On April 13, 1961 the company, from its office in Nashville, Tennessee, wrote to and there was delivered to Mr. Lee the following letter:

"Dear Mr. Lee:

"We have completed our investigation and find that this risk does not meet our current underwriting re-

quirements. You may consider the binder cancelled upon receipt of this letter.

> "Very truly yours,
> George Dansby, Underwriter."

Mr. Lee contends that on April 16, 1961, he wrote to Mrs. Lloyd the following letter:

"Dear Mrs. Lloyd:

"State Automobile Mutual Insurance Company has advised us that they will not accept your insurance coverage. Therefore, we have no alternative but to place your insurance on the assigned risk plan or a rated up company. Before doing so, we must complete a signed application. Please drop by our office at your earliest convenience.

> "Yours truly,
> Walter Lee."

So it is in the cross-bill the State Automobile Mutual Insurance Company takes the position that it does not owe any claim of any kind, but that in event it does, it is entitled to recover from the agent because of his negligence in handling their business in the manner in which the record discloses.

On the 22nd day of April 1961, an accident occurred in which this involved automobile was in a collision with a Greyhound bus and other vehicles, and the complainants deny that at that time they had ever received any notice of the cancellation of any binder of any character.

It is insisted by the complainants that a binder for insurance, either oral or written, nor a policy of insurance, could effectively be cancelled without ten days no-

tice in writing, to the assured, in accord with the terms of the policy.

All of these proceedings were coupled with damages that had been filed against the owner of the Dodge Dart and her husband, and the whole question of the valid issuance of a binder, the meaning of a binder, the question of its cancellation, the amount of damages caused in the collision which had occurred with this Dodge Dart, and every other involved matter was determined in this proceeding.

The original bill, amended bill, the original answer, the original cross-bill and the evidence are in three volumes, exhibits have been filed, parties have personally testified, experts have testified, et cetera. The Court on April 16, 1964, in his amended memorandum stated:

1—That the initial question presented is whether or not that this binder required a ten days notice to the assured in order to effect a cancellation as provided for such in its standard provision policy.

2—That in event he found that ten days notice was required, this binder was in effect on April 22, 1961, when this accident occurred, and that the cancellation effort made on the 16th day of April did not give the time required, and therefore, would not be binding.

3—That if the Court found that the standard provisions of the policy do not apply to binders, whether cancellation of the one involved was to be determined.

4—Whether the binder was legally cancelled before the accident occurred, otherwise the amount of the damage would be determined.

He then filed a finding of facts on all issues and final decree was entered in which he decreed:

1—That complainant owned on February 25, 1961 this subject car, 1960 Dodge Dart sedan.

2—That Walter Lee caused a contract of insurance to be written on it in February 1961, known as a family-combination automobile policy for liability, collision, physical damage, indemnity, etc.

3—That it provided coverage for physical injury to one person in one occurrence not exceeding $10,000, to all persons physically injured in one occurrence not exceeding $20,000, and property damage not to exceed $5,000 in each occurrance.

4—As to that particular insurance policy complainants received notice of its cancellation on the 21st day of March 1961.

5—That on April 5, 1961, this agent, Walter Lee, acting within the scope of his authority as an agent for the defendant, State Automobile Mutual Insurance Company, caused the issuance of the alleged oral binder of insurance through said State Automobile Mutual Insurance Company, Inc.

6—That the standard policies issued by the defendant, State Automobile Mutual Insurance Company contained the provision that it could not be cancelled except upon ten (10) days' written notice given directly by the company to the assured before the cancellation of the policy or the binder could be legally effective.

7—That on April 22, 1961, the operator of the complainants' automobile at the time of the collision, was an additional insured under the terms of the standard poli-

cies issued, such as was involved in this proceeding, and that the involved collision caused property damage, physical injury or bodily injury to several occupants of the car.

8—That the burden of proving that the notice given to the agent by the State Automobile Mutual Insurance Company in its effort to cancel the binder of insurance issued on said automobile of the complainants was on the insurance company and said agent to notify the assured of that cancellation ten days before the effective date; that the effort to do so was ineffective, and that cancellation effort could not have occurred because it was only seven days between the 13th and the 22nd, and therefore, whether the assured received the notice or not, which they deny, could not be made effective.

He then held the insurance was in effect, the binder had been issued, had not been cancelled, and according to the stipulations and proof in the case, he decreed damages as follows:

| | |
|---|---:|
| 1—Collision damage to the complainants, Dodge Dart automobile of $1650.00 less $50.00 deductible | $1600.00 |
| Damage to Greyhound bus | 852.80 |
| Damage to William McGee's vehicle | 75.00 |
| Damage to H. D. Parks' vehicle | 38.00 |
| Damage to two occupants of insured's automobile | 83.00 |

Transportation expense sustained by the complainants occasioned by failure of defendants to confirm insurance with the Tennessee

Department of Safety as provided by the Financial Responsibility Laws of the State of Tennessee     100.00

Attorney's fee expended by the complainants in the adjustment and processing of claims occasioned by the subject automobile collision     600.00

$3348.80

He then held that the binder contained all of the provisions of a standard policy of that character as shown by the exhibit of such a policy in blank, as Exhibit 4 to the testimony of Walter Lee. He took no action on the crossbill filed by the State Automobile Mutual Insurance Company against Lee, and said:

"* * * the ruling of the Court that ten (10) days notice is required to cancel a binder makes such action unnecessary."

He further held that defendant Insurance Company having admitted the issuance of the binder, put the burden on it to prove its legally effective cancellation and that it had not carried such burden.

He decreed for the complainants in all of the matters above set out and taxed all of the cost to the defendant, State Automobile Mutual Insurance Company. Exceptions to the decree of the Chancellor were saved, appeal prayed, granted and perfected to Court of Appeals of Tennessee at Jackson, where the case has been heard and now disposed by this opinion. $4,000 appeal bond was ordered and executed.

The record shows that the case was heard before the Chancellor on oral testimony by written consent of the parties, which written consent is filed in the record.

The only assignment of error is as follows:

"The Court erred in holding that ten days written notice was necessary to cancel the binder issued by defendant-appellant State Automobile Mutual Insurance Company, Inc. In this connection the Court erred in failing to consider the intent of the parties as to the time the binder was to remain in effect and in not ruling that the parties intended the binder to terminate immediately upon notice to complainant of rejection of insurability."

In the reply brief of Walter Lee, d/b/a Walter Lee Insurance Agency, it is said:

"* * * counsel for Defendant-Appellee Lee joins with Complainant-Appellees, Lloyd, in their Brief, with one exception. Defendant-Appellee Lee disagrees with the statement contained on page 8 of Complainant-Appellees' Brief wherein it is stated that it was the finding of the trial Court that Defendant-Appellee Lee failed to give notice of cancellation of the subject binder. It is respectfully submitted that the finding of the Court was that the defendants failed to carry the burden of proof that the notice of cancellation was properly mailed."

With the above statement contained in the brief of appellee Lee, we think it proper to copy what is termed "Supplemental Memorandum Opinion", shown in the record at page 58, as follows:

"The Court takes no action upon the cross bill filed by State Automobile Mutual Insurance Company against its agent, Walter Lee, because in the opinion of the Court, the ruling of the Court that ten (10) days notice

is required to cancel a binder makes such action unnecessary.

"Robert A. Hoffman, Chancellor

5-1-64."

In the Memorandum Opinion filed by the Chancellor, he said:

"It is generally held that where a valid contract of insurance has been effectuated, the insurer cannot cancel the policy without the consent of the insured, in the absence of a statute or policy stipulation so providing."

And he further said:

"The terms and provisions which control in the construction of the coverage afforded by a binder are those in the ordinary form of policy usually issued by the company at that time upon similar risks. The binder is subject to the conditions of the policy contemplated, though such policy may never issue."

For his authorities with respect to the above statement he referred to:

Appleman, Insurance Law & Practice, Vol. 6, Sec. 4181, p. 705; Great American Insurance Co. v. Maxey, 5 Cir., 193 F.(2d) 151; Dixon v. Pickle, 46 Tenn.App. 223, 327 S.W.(2d) 50; America Insurance Co. v. Wilson, 77 Conn. 559, 60 A. 293; Van Tassell v. Greenwich Ins. Co., 72 Hun 141, 25 N.Y.S. 301; Aetna Insurance Co. v. Texarkana National Bank, Tex.Civ.App., 60 S.W. (2d) 251.

He further held that the burden of proving cancellation of an insurance contract was upon the insurance company, citing 29 Am.Jur. Insurance Section 1841 and also Cherokee Insurance Co. v. Hardin, 202 Tenn. 110, 302

S.W.(2d) 817, and further in that finding of facts, said:

"The Court finds that the binder in question was in effect at the time of the accident on two grounds:

(1) That a ten day notice was required for cancellation of said binder.

(2) That defendants have failed to carry the burden of proof that notice of cancellation of the policy was mailed to the insured prior to the time of said accident."

Following the above quote from the memorandum, which contains many other statements, the Court said:

"The Court is therefore of the opinion that the defendant, State Automobile Mutual Insurance Co. Inc., should be required to indemnify the complainants against monetary loss resulting from the collision that occurred on the 22nd day of April 1961.

"All other matters are reserved.

"A decree in accordance with the above opinion will be submitted for entry.

"This 15th day of April, 1964.

"Robert A. Hoffman, Chancellor."

In Dixon v. Pickle, 46 Tenn.App, 223, 327 S.W.(2d) 50, the agent had told the applicant Heater, "You are covered from this moment". The accident involved in that particular case occurred the following day. The above quoted statement was made on February 15 or 16, 1956, and thereafter the company issued to the applicant a policy which contained a "student risk endorsement". So it was that the accident occurred before the policy was actually issued, but it did issue on February 29, 1956,

said policy, and our Court held at the time of the application the peculiar restrictions were not mentioned to the applicant, and he did not know he would have any such statements in his policy and that he would be bound by such statement. In that opinion we did quote from 44 C.J.S. Insurance sec 23C, as follows:

"A valid temporary or preliminary contract of present insurance may be made orally, or it may be partly in parol and partly in writing, or, unless provided otherwise by statute, it may be, and frequently is, evidenced by a binder or binding slip, a covering note, a binding receipt, a binding memorandum entered on the books of the agent, or other memoranda. The fact that a standard form of policy has been adopted by statute does not render invalid a preliminary or temporary contract of present insurance resting in parol or evidenced by a binder.

"Sometimes express language is employed to make the general policy of the company, or the standard policy of a certain state, a part of the preliminary or temporary contract of present insurance. Even where such express language is not employed, the contract is construed as being subject to the terms and conditions of the policy to be issued or of the policy ordinarily used by the company, or, if there is a standard policy in the jurisdiction, according to the terms and conditions of that policy, and it is presumed that the parties contemplated such a policy, containing such conditions and limitations. However, provisions in a policy, issued and tendered but not accepted after loss, cannot be read into an executed contract of temporary insurance, where both the contract and the application are silent as to such provisions and the matter covered

thereby. Temporary contracts which do not specify the premium to be paid are construed as implying the usual and customary rate. The intention of the parties is the fundamental issue in interpreting a binding receipt issued by insurer at the time of the application for the policy, and where such a receipt is clearly established as a temporary contract of insurance it is favorably regarded by the courts. Where it is ambiguous, it should be construed against the insurance company."

In Exhibit 4 the standard State Automobile Mutual Insurance sample policy is filed, and the standard cancellation clause in Item 16 is as follows:

"This policy may be canceled by the insured named in Item 1 of the declarations by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancelation shall be effective. This policy may be canceled by the company by mailing to the insured named in Item 1 of the declarations at the address shown in this policy written notice stating when not less than days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by such insured or by the company shall be equivalent to mailing."

In Cherokee Insurance Company v. Hardin, supra, the trial Court had under consideration the exact language that is contained in the above quote. That case was tried before a jury, and the trial Court, at the conclusion of all the proof, denied a motion for directed verdict by the defendant company and submitted the case to the jury.

The case was brought to this Section of the Court where the opinion of this Court was prepared by Judge Bejach. The Supreme Court granted certiorari and the opinion for that Court was prepared by Justice Tomlinson. In that case Justice Tomlinson, quoting from the involved policy, called special notice to this statement:

"The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period."

He called particular attention to the requirements in the policy that the "mailing of notice as aforesaid shall be sufficient proof of notice" and that it did not require the receipt of notice. He further said:

"The only evidence in the record to support the jury's finding that the cancellation notice was not mailed is the denial of receipt thereof by Mr. and Mrs. Hardin. Is that denial material evidence here that the notice was not mailed?"

He reversed this Court and the trial Court, and directed a verdict for the insurance company. In that opinion he commented upon the fact that in the record on the trial of the case there was a mailing receipt exhibited. He referred to Farmers Insurance Exchange v. Taylor, 10 Cir., 193 F.(2d) 756 and Wright v. Grain Dealers, Nat. Mutual Fire Insurance Company, 4 Cir., 186 F.(2d) 956, 958, and said:

"But in the case at bar the question is whether the denial of receipt may be regarded as evidence that the letter was not mailed, there being in the evidence the official acknowledgment of the Post Office that it was received for mailing, in addition to other uncontra-

dicted evidence, oral and documentary. This Court has been able to find only two cases dealing with that situation."

In Farmers Insurance Exchange v. Taylor, supra, and in Wright v. Grain Dealers Nat. Mutual Fire Insurance Company, supra, there was official acknowledgment by the postoffice of the receipt of the letter in controversy. In the Oklahoma case the verdict of the jury was sustained on the basis of the denial of the receipt of the letter, and in the Virginia case the jury's finding was that the letter had not been mailed.

We think the instant case now before us can be differentiated from these last mentioned cases referred to, including the Cherokee case. Each of the cases had jury verdicts in them, while in the case before us there is no jury, there is a Chancellor's finding and decree, and on appeal to this Court unless the proof preponderates against the finding of the trial Court, we must sustain the judgment of that Court, provided the law has been properly applied.

Mr. Lee had handled the prior policy, as testified, for the complainants in the Textile Insurance Company. When that policy of insurance was cancelled Mr. Lee sent an office Memo addressed to the insured, Cecil H. Lloyd, 742 Court Avenue, Memphis, Tennessee, in which he said:

"Dear Mr. Lloyd:

"Your auto insurance expires February 25th, 1961, and we would like to talk with you regarding renewal. Please call us at BR5-8165.

"We shall look forward to hearing from you.

"Yours very truly,
WALTER LEE INSURANCE AGENCY."

That notice was received, and that company had motor vehicles in that policy contract which belonged to both Mr. and Mrs. Lloyd. That notice is what evidently caused Mrs. Lloyd to talk to Mr. Lee about this insurance on her automobile. After admitting that the binder was issued the State Automobile Mutual Insurance Company addressed a letter to Mr. Lee, copied on page 604 of this opinion, which letter is on the stationery headed "State Automobile Mutual Insurance Co. Tennessee Office, Westmont Building, Corner Elliston Place and 22d Avenue, Nashville, Tennessee". The letter which Mr. Lee contends he forwarded to the Lloyds is addressed to Cecil H. Lloyd, 742 Court Ave., Memphis, Tennessee, and is from the Walter Lee Insurance Agency, is on a notation memorandum, same is copied on page 605 of this opinion.

That is the notice that Mrs. Lloyd says she never received, and it is noticed particularly that it is addressed to "Cecil H. Lloyd", but in the salutation, it is "Dear Mrs. Lloyd". It is further noticed that the letter dated 4-16-61 does not appear to have been written by a secretary due to the fact that there are no secretarial initials at the end of the letter, as is usually shown. That is explained by Mr. Lee, after some misgivings about it, that the letter was written on Sunday, April 16, 1961, at a time when his secretary did not usually go to the office, while the one dated 2-13-61 was signed by Walter Lee Insurance Agency and with the designation out in the lower left hand corner "mc". The secretary was put on the stand and identified that as having been written by her.

Furthermore, the Chancellor held that the burden being upon the insurance company to give notice of the cancellation of the binder, and that it claimed to have done so

through its agent by the notation addressed to the agent and by the notation which he claimed that he sent, and which was denied by Mr. and Mrs. Lloyd, "there was no proof that it was ever mailed". There was no proof that it was ever stamped. There was no receipt of any kind, nor was there any refund of any premium. The careful examination of the testimony of the agent is not particularly impressive. It might be said that testimony of Mrs. Lloyd was also not strictly impressive, but the Chancellor saw and heard both of these witnesses testify, along with all the other witnesses, and as it is often said, he is in a better position to weigh the integrity of these witnesses than we are.

So it does not appear to us that the Court bottomed his complete conclusions upon the fact that it required ten days mailed notice to cancel the binder, but upon the further fact that on the proof he did not believe nor find that the notice from Lee Insurance Agency had ever been mailed or received by Mrs. Lloyd or Mr. Lloyd. Therefore, having found that the burden was upon the insurance company to prove the mailing of the notice, they had not carried such burden and that the preponderance of the proof is to the effect that no notice was ever mailed. Evidently that seems to be the essence of one segment of his memorandum opinion or conclusion.

On consideration of all the cases relied upon by the parties, and based upon our own research, it is our opinion that where there is nothing more said in an oral binder than that which leads the party to believe they are insured from the moment the binder is issued, whether it be oral or written, we hold that without implied or expressed modifications showing that the parties did not so intend the binder bind the particular hazard insured

against, in the absence of some statutory provision otherwise effective, in accord with the standard policy provisions which usually issued in event the bindee is protected by the issuance of a policy contract.

We feel that this must be the correct conclusion because the cancellation right and requirement of notice of such cancellation is for the benefit of the insured to give insured time to obtain other insurance or protection. Appleman on Insurance, Vol. 6, p. 149, 1964 pocket parts, Section 4182. This is true of all of our cases in Tennessee that deal with the question for "whose benefit" the right to cancel is authorized by the insurer.

We further hold that in every case wherein an insurer seeks to take advantage of a policy cancellation provision, that proof of mailing shall be sufficient proof of delivery, it must carry the burden of showing that the terms of the contract have been strictly complied with. Section 4186 1964 Pocket parts, Appleman's Insurance Law, p. 151.

As related to the matter before us that means that the notice, regardless of when it may become effective, shall be mailed to the insured at the address last known. In the instant case the insurance company mailed its letter to the agent, not to the assured, and while it is true if the insured received notice from an agent with respect to cancellation of a binder or an insurance policy, in strict compliance with the provisions of the policy, the notice from the agent would be notice from the company. Particularly is this true when that notice came from the agent through which the binder or policy had been procured.

Section 7221, p. 306, Vol. 12 Appleman on Insurance, has this to say:

"The term 'binder' has a well-known significance in the parlance of insurance contracts. * * * At common law, the insurance contract was not required to be in writing, nor the whole contract embraced in a policy, as the insurer could be bound by books, binding slips, receipts, or memoranda."

We have reluctantly reached the conclusion under the facts of this cause, that the oral binder issued contemplated all the binding provisions of the standard contract of the State Automobile Mutual Insurance Company, which was generally issued in event the company approved such risk and actually issued the policy. That is, the essential element of the contract is implied in every oral or written binder prior to the issuance of a policy, unless in the writing or the oral binder there is an express or implied agreement to the contrary by both the assured and the insurer.

In this record from the testimony of the insurance agent Lee in his evidence with respect to the notice etc. of the cancellation of the binder, the agent admitted that he procured this binder, as well as the company having admitted that it issued this oral binder, and he was asked:

"Q—There is no question that this binder was in force on the 5th day of April?

A—None whatsoever.

Q—There is no question that this was in force until you received the notice?

A—That's right, until I notified her. State Automobile allows any agent a reasonable length of time to notify the insured that the binder was cancelled, which is not only done by telephone but confirmed by letter.

Q—How long is that reasonable length of time after the binder is cancelled?

A—Whatever length of time it takes us to get in contact with them.''

He testified that he could not swear that any contact with the insured was made by telephone. Then the Court asked the question:

''THE COURT: You say they allow you a reasonable length of time?

THE WITNESS: Yes, sir.

''THE COURT: What is a reasonable length of time?

THE WITNESS: A day maybe or whatever time it takes for them to mail the letter to my office.

''THE COURT: Is that all the discretion you have?

THE WITNESS: To mail it to the address of the insured, yes, sir.

''THE COURT: You couldn't allow them 30 days?

THE WITNESS: No, sir.

''THE COURT: What governs that?

THE WITNESS: The company—well, the company has an unwritten rule that if an oral binder is cancelled, it must be—you must notify the insured immediately and get off the risk.''

He was further asked:

''Q—And if State Automobile Mutual said, 'You may consider the binder cancelled upon receipt of this letter,' that would mean that it continues on until you can advise the insured, doesn't it?

A—Normally, I would say so."

It is further noted that this letter written to Mr. Lee actually meant and actually said that "you may consider the binder cancelled upon receipt of this letter"; that no where in the letter does it direct the agent to write or 'phone the assured. Though that may be the meaning, or the intention or the unwritten law as stated by Mr. Lee.

■ We do not mean to hold, and do not do so, that the assured must actually receive notice, either in order for the cancellation of a binder, or the cancellation of a policy, written to begin with, or written by the use of a binder, for a period of ten days before that policy is further ineffective. We do mean to say, however, that the company must prove by a preponderance of the evidence when it defends on the basis of having cancelled a binder or cancelled a written policy contract, that it has complied with the terms of the specific cancellation clause embodied within the contract, and in this case, it is the standard provision of a standard policy insuring against the same risk which is embraced in the binder.

Thus we hold that the company has not proven the essential requirements of the necessary cancellation clause, which itself has written into its contract. It is, therefore, bound by its failure to so prove. The result is that the assignment of error is overruled.

There is no dispute about the amount of loss as set out in the Chancellor's decree, and that decree insofar as the amount is concerned is affirmed. Decree will be entered here in favor of the assured, together with interest on the amount set out in the final decree from the date thereof to the date of payment.

Since the Chancellor had specifically held that he was not passing upon the question of the liability of the agent to the company, we do not mean for this opinion nor the decree of this Court based thereon, to be construed as res adjudicata of the rights of the insurance company and its agent. However, we do believe, as did the Chancellor, that with the proof in this case as we find it in this record, there is no necessity for determination of that dispute at this time.

Decree will be entered in accord with this opinion.

Carney and Bejach, JJ., concur.