FERRO CORPORATION, Complainant-Appellant, v.
AVIATION INSURANCE MANAGERS, INC. and
Pacific Indemnity Company, Defendants-Appellees.
—462 S.W.2d 523.

Middle Section. August 28, 1970.

Certiorari Denied by Supreme Court February 1, 1971.

340

Jos. G. Cummings, Nashville, for complainant-appellant.

Manier, Crouch, White & Herod, Nashville, for defendants-appellees.

TODD, J. This is a declaratory judgment suit to determine liability insurance coverage. The complainant, Ferro Corporation, has appealed from the chancellor's decree favorable to the defendant-insurers, Aviation Insurance Managers, Inc., and Pacific Indemnity Company.

Complainant insists that defendants are obligated to defend and exonerate complainant from liability arising out of the fall of an aircraft and death of its occupants on February 22, 1967. At the time of the tragedy, the aircraft was owned by Abernathy Auto Parts Company but was in the possession and control of employees of complainant under the rental arrangement. The ultimate question is whether or not complainant, as bailee of the aircraft, was and is entitled to the benefit of a policy of liability insurance which was admittedly issued on July 18, 1966.

The material facts leading to the controversy are undisputed, except as indicated.

On July 18, 1965, defendants issued to Abernathy Auto Parts Company, Policy No. AH-5-7024, insuring the subject aircraft and another aircraft against "Hull Damage" and liability for one year. The total premium was $836.00.

On August 12, 1965, Ferro and Abernathy made a written lease agreement providing that Ferro would use the aircraft of Abernathy for a minimum of 15 hours per month at $22.00 per hour. Ferro was required to pay a minimum rental of $330.00 per month whether or not the aircraft was actually used the minimum 15 hours. For use in excess of 15 hours per month, the charge was fixed at $20.00 per hour. Abernathy was required to furnish to Ferro a copy of the "current insurance policy covering the aircraft usage." The agreement was subject to termination by either party on 30 days written notice.

On August 25, 1965, the agent of defendants wrote to Ferro, giving details of the existing liability insurance.

On October 4, 1965, Ferro was furnished with a copy of the aforesaid Policy No. AH-5-7024.

On November 9, 1965, defendants' agent forwarded to Ferro a certificate of said insurance together with an endorsement adding Ferro as an additional insured. Defendants charged Abernathy $100.00 additional premium for the issuance of this endorsement. Ferro claims to have paid this amount to Abernathy. Abernathy admits receipt of one $100.00 payment from Ferro but does not recall whether the $100.00 payment was for this endorsement, or Ferro's part of the premium on a renewal policy.

On July 18, 1966, defendants issued a renewal policy, No. AH-5-8584,.covering only the aircraft involved herein and naming as insured: "Abernathy Auto Parts Co. (Lessor) and Ferro Corp. (Lessee)." Abernathy paid the entire premium of $724.00 for the renewal policy. Defendants insist that no charge was included in the premium for naming Ferro in the policy, however Ferro

claims to have paid Abernathy another $100.00 for its part of the renewal premium. Abernathy admits receiving only one $100.00 payment from Ferro, but cannot say whether it was in payment of the charge for adding Ferro to the first policy or was Ferro's part of the premium on the renewal policy.

In the late Fall of 1966 (no more specific date is given) Ferro and Abernathy orally agreed to terminate their written lease agreement. Instead, they substituted an oral agreement which provided simply that Ferro would be permitted to rent the aircraft at any time it was available at $35.00 per hour. No minimum monthly use was required, and the continuation of insurance was not mentioned.

In December of 1966 (exact date not shown) Ferro procured a policy of insurance from Insurance Company of North America covering operation by Ferro of "non-owner" aircraft.

On February 8, 1967, Ferro wrote to Aviation Managers, one of the defendants herein as follows:

"Attached is certified true copy of above policy and Certificate of insurance. Please cancel endorsement naming Ferro Corporation as additionally insured as lease was terminated as of December 31, 1966.

"Advise amount of return premium to Abernathy Auto Parts Co."

Defendants did not respond to said letter, but wrote their local agent to ascertain whether or not Abernathy also desired the policy to be cancelled. No answer was received from said agent and no further action was taken

by defendants until February 22, 1967, the date of the wreck which precipitated this litigation.

The original bill of complainant alleged certain of the foregoing facts and further stated:

## V.

"Complainant would show that on February 22, 1967, it had leased the airplane from Abernathy Auto Parts Company, which was insured by defendants, when said aircraft was involved in a crash in the State of Kentucky, killing all aboard. As a result of said aircraft accident, suit has been filed by the Estate of one of the passengers killed in said aircraft against your Complainant, the estate of the deceased pilot, and the owner of the aircraft. Defendants have declined to defend your Complainant in said death case.

## VI.

"Your Complainant would further show to the Court that the said death case is or will be predicated upon the claim that your Complainant was legally responsible for the operation of said aircraft as lessee thereof, at the time of the crash. The word 'Insured' is defined in said policy as follows:

'INSURED' when unqualified and wherever used with respect to coverages A, B, C, and D shall include not only the named insured but also any person while acting or riding in the aircraft and any person or organization legally responsible for its use, provided the actual use is with the expressed permission of the named insured * * *'

## VII

"Complainant alleges and charges that it is an insured under defendants' policy, either by virtue of the endorsement naming it as an additional insured thereunder or by virtue of the definition of 'Insured' in said policy, and that it is entitled to the protection and benefits of said policy as a result of said fatal accident and the resulting lawsuit filed against Complainant."

The bill prays for a declaratory judgment as to whether complainant is entitled to protection under said insurance policy.

The answer of defendants, filed on July 5, 1968, admitted that defendants issued policy No. AH-5-8584 for a year commencing July 18, 1966 and that Ferro Corporation was included therein as additional named insured. The answer continues:

## IV

"They admit that on February 8, 1967 the Complainant, Ferro Corporation, wrote a letter to the Atlanta, Georgia office of Aviation Insurance Managers, Inc. requesting that its name be deleted as an additional named insured in said policy and returning its certified true copy of said policy for cancellation as its lease with the named insured, Abernathy Auto Parts Company (Lessor), was terminated as of December 31, 1966, but said letter was not received by the Atlanta office of the said Aviation Insurance Managers, Inc. until February 13, 1967.

"They admit that no endorsement to said policy was issued prior to the time the aircraft was destroyed on February 22, 1967 and allege that because of the cleri-

cal routine necessary to do so they did not have time within which to issue such endorsement.

"They deny that Section 23 of the Conditions of said policy makes it necessary for an endorsement deleting Complainant's name as an additional named insured in said policy to terminate coverage to the Complainant as an additional named insured under the circumstances existing and upon specific request of the Complainant to have its name deleted from said policy and upon the return of its copy of said policy.

"They charge and aver that the policy was effectively cancelled as to the Complainant by its actions in surrendering its certified true copy of said policy in accordance with Condition 25 of the policy, to which reference is hereby made.

"They deny that Complainant was entitled to receive any refund of the unused portion of the policy premium from the Defendants since they had never collected any premium directly from the Complainant.

\*　\*　\*　\*　\*　\*

## VII

"They deny that coverage is furnished to the Complainant by virtue of its being an additional named insured in the policy because of the specific request of the Complainant that it be deleted from said policy as an additional named insured (Lessee) because its lease with the owner had expired and such deletion had become effective prior to the destruction of the aircraft on February 22, 1967.

"They further deny that the Complainant is entitled to the protection and benefits of said policy by virtue of the definition of 'insured' in said policy because of the language contained in the definition of 'insured,' all of which language was not quoted in paragraph VI of the Complaint and which additional language reads as follows:

'* * * this policy with respect to any person or organization does not apply to:

  *  *  *  *  *  *

(d) a student or renter pilot or anyone operating the aircraft with the actual or implied knowledge or consent of a renter pilot.'

"The Defendants aver that the above-quoted exclusion includes the Complainant in this cause since the Complainant falls within the interpretation of the term 'renter pilot'."

On December 9, two days before trial, defendants were permitted to file an amendment to their answer as follows:

"They further say that at the time of the crash of the aircraft in question it was not being used in accordance with the terms and provisions of the policy of Pacific Indemnity Company in that the declarations of the policy provided under item 9 that the aircraft will be used only for the purpose of 'industrial aid.' The term 'industrial aid' is defined in the policy as including the uses enumerated in the definition of pleasure and business, and also includes transportation of executives, employees, guests and customers, excluding any opera-

tion for which a charge is made, and the Defendants aver that a charge was made for the use of the aircraft at the time of the crash involved.''

Upon trial of the case, the chancellor decreed that defendants had no obligation to defend complainant, and complainant has appealed.

■ The first assignment complains that the chancellor allowed the defendants to amend their answer on December 9, 1969. Complainant insists that, after the original answer had been on file for 18 months, defendants had no right to amend only two days before trial without strict compliance with chancery rules. Gibson's Suits in Chancery, Fifth Edition, sec. 444, pp. 501, 502.

In reply, defendants cite Gibson, sec. 436, and numerous authorities as to discretion and liberality in allowance of amendments.

Rule 12, Tennessee Court of Appeals Rules, reads in part as follows:

"The assignment of errors shall contain in the order stated:

        *    *    *    *    *    *

(2) A statement of the errors of fact or law relied upon to reverse or modify the same, showing specifically wherein the action complained of is erroneous, and *how it prejudiced the rights of the appellant, * * *"* (Emphasis supplied)

Complainant fails to point out, and the record does not disclose wherein an injustice resulted from the allowance of the amendment. If the amendment stated a ground of defense which was not proper for considera-

tion, or if complainant was unreasonably denied the opportunity of rebuttal, either by evidence or argument, then the allowance of the amendment was prejudicial. Such is not shown, hence there is no legitimate ground of reversal on this score.

The first assignment of error is respectfully overruled.

The second assignment of error is as follows:

"The Court erred in holding that appellant's letter of February 8, 1967 was sufficient to cancel the policy of insurance insofar as the appellant was a named insured (R. p. 159, Tr. p. 30)."

The final decree herein contains the following:

"* * * the Court finds that the letter dated February 8, 1967 written by the Complainant, Ferro Corporation, to the Defendant, Aviation Insurance Managers, Inc., and made Exhibit (B) to the Original Bill operated to cancel the policy of insurance issued by Pacific Indemnity Company and made the subject of this cause, insofar as it made the Complainant a named insured."

Complainant relies upon Section 23 of the policy which reads:

"* * * nor shall the terms of the policy be waived or changed except by endorsement."

In 43 Am.Jur.2d, Insurance, sec. 423, p. 469 is found the following:

"Property and liability insurance policies generally contain provisions allowing cancellation at the request of the insured, and under such provisions the surrender of a policy with a request that it be terminated operates ipso facto as a cancellation."

The policy in the present case contains the following provision:

"25. CANCELLATION. This policy may be canceled by the named insured by surrender thereof to or by mailing to the Aviation Managers written notice stating when thereafter the cancellation shall be effective. * * *

\* \* \* \* \* \*

"If the named insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company or the Aviation Managers cancel, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation. The company shall not be liable for any return premium' in respect to an aircraft on which a total loss has been paid."

In 43 Am.Jur.2d, Insurance, sec. 424, p. 470, is found the following:

"Where an insurance policy provides that the policy shall be canceled at any time on the request of the insured, or by the company on 5 days' notice, and that if the policy is canceled the unearned portion of the premium shall be returned on surrender of the policy, the company retaining the customary short rate, a written request for cancellation by the insured effects a cancellation at once and without any action by the insurer even though the policy is not surrendered and the unearned portion of the premium is not returned,

since these are not conditions precedent to cancellation by the insured. After cancellation and upon demand by the policyholder, the insurance company is liable to pay to him the unearned premium. However, whether or not such unearned premium is paid in no way delays or affects the cancellation of the policy."

In 45 C.J.S. Insurance sec. 443, p. 68, is found the following:

"Insured may abandon a policy of insurance, and abandonment by insured may be effective without any affirmative action by the insurance company. The test of an abandonment is the existence or nonexistence of an intent to abandon."

In the same article, sec. 458, pp. 115, 116, is found the following:

"* * * If by statute or contract insured has the privilege of canceling the policy at his pleasure, the company's consent is not a prerequisite to cancellation; and no formal cancellation or physical defacement of the policy is required. * * *"

In 14 Ruling Case Law, Insurance, sec. 196, pp. 1016, 1017 is found the following:

"* * * The surrender of a policy, with a request that it be terminated, operates ipso facto as a cancellation, where the policy provides that the "insurance may be terminated at any time at the request of the assured.' "

█ It is complainant's insistence that the policy (naming both Abernathy and Ferro as insured) was an entire instrument and was not subject to alteration (by deleting Ferro) in any manner except that provided in

the policy (by endorsement on the policy itself). If this insistence be sound, then Ferro's rights under the policy have not been extinguished because Ferro has not been deleted from the policy by endorsement.

Contrary to complainant's insistence, the policy was not entire, but severable. Actually the two "policies" sent to Abernathy and Ferro were visual representations of two insurance contracts, one between defendants and Abernathy and the other between defendants and Ferro. There was and is no reason whatsoever why the obligations of defendants to Abernathy could not be cancelled, leaving the obligations of defendants to Ferro unaffected and intact. Likewise, Ferro had every right and power to cancel, waive or abandon its rights against defendants without affecting in any way the rights of Abernathy against defendants.

No authorities have been found for the severability of a policy issued to two insureds, however the principle of severability has been uniformly recognized under facts where no substantive rights would be violated by application of the principle. See Lloyds America v. Duck, 174 Tenn. 520, 128 S.W.2d 625 (1939); Payne v. Eureka-Security Fire & Marine Ins. Co., 173 Tenn. 659, 122 S.W. 2d 431 (1938); Smith v. Equitable Life Assur. Soc. of United States, 169 Tenn. 477, 89 S.W.2d 165 (1935); 44 C.J.S. Insurance sec. 336, p. 1284 ff.; 43 Am.Jur.2d, Insurance, sec. 298, 303, pp. 359-366.

The contract of defendant insurers with the insured Ferro was severable from the contract of defendant insurers with the insured Abernathy. The insured Ferro had the same power to cancel its contract and terminate

its rights under the joint policy as it would have had under a policy issued to Ferro alone. Therefore, the rights of Ferro as a named insured under policy No. AH-5-8584 were effectively terminated upon receipt of the aforesaid letter of February 8, 1967 requesting termination.

The second assignment of error is respectfully overruled.

The third assignment of error is as follows:

"The Court erred in finding that at the time of the crash on February 22, 1967, the aircraft was being used in violation of the terms of the policy as provided in Item 9 of the declarations, and that at the time of the crash, the aircraft was rented by the owner to the appellant for which a charge was made, which the owner had no right to do, thus excluding coverage under the said policy of insurance (R. pp. 159-160, Tr. p. 30)."

Under this assignment, Ferro insists that even if Ferro has been removed as a named insured, it is entitled to insurance protection under the "omnibus clause" of Abernathy's policy, which reads as follows:

" 'INSURED' when unqualified and wherever used with respect to Coverages A, B, C, and D shall include not only the named insured but also any person while using or riding in the aircraft and any person or organization legally responsible for its use, provided the actual use is with the expressed permission of the named insured. This policy with respect to any person or organization does not apply to:

       \*    \*    \*    \*    \*    \*

(d) a student or renter pilot or anyone operating the aircraft with the actual or implied knowledge or consent of a renter pilot."

Defendants insist that the foregoing provision in inapplicable because of the quoted exception for "renter pilots."

In this respect, the final decree contains the following:

"The Court further finds that in view of the above, at the time of the crash of the aircraft on February 22, 1967, the said aircraft was being used in violation of the terms of the said policy as provided in item 9 of the policy declarations in that at the time of the crash the aircraft was rented by the owner to the Complainant for which a charge was made, which the owner had no right to do, thus excluding coverage under the said policy of insurance."

The foregoing quotation indicates that the chancellor found as a fact that the operation of the aircraft by employees of Ferro was by a "renter pilot," and thus within the quoted policy exclusion. It is insisted by complainant that defendants abandoned the "renter pilot" defense, but no evidence of such abandonment is found in the record, and the decree may well rest upon this defense.

In addition, defendants insist that coverage under the "omnibus clause" is not effective for the reason stated in the amendment to the answer, quoted supra, that the declarations included in the policy state that the aircraft will be used for "industrial aid," which is defined in the policy as "transportation of executives, employees, guests and customers, *excluding any operation for which a charge is made.*"

Complainant cites numerous authorities interpreting various policy provisions, but it is conceded that there are no reported authorities which define the term "renter pilot," or which determine the rights of a renter for hire under a policy limited to use for "industrial aid."

W. S. Craig, an insurance specialist introduced by complainant testified as follows:

"Q. In the industry, what does 'renter pilot' refer to?

A. An individual that rents and flies airplanes.

\* \* \* \* \* \*

Q. That's right, yes, sir. Now, then, further assuming that after that policy was written under those circumstances and then the insuror, the insuring company, is requested by Ferro Corporation to remove its name from that policy and surrenders its certified copy of the policy for cancellation and also advises that insurance company that the lease has terminated, then under those circumstances, Mr. Craig, the use of this aircraft by Ferro for a price paid to the owner, Abernathy, would be in violation of that industrial aid, wouldn't it?

A. If the exposure to the company is the same, I can see no difference whether there's a written lease or whether they are included as named in the policy or not. They're included as an insured under the unqualified word 'insured' in the policy. They're an omnibus insured.

\* \* \* \* \* \*

Q. All right. You, as an insurance man, would know, under the facts that I gave you in the hypothetical

question, that if this request was made on February the 8th, 1967, to the insurance company to cancel the policy insofar as Ferro was concerned because the lease was terminated and the crash occurred on February 22, 1967, you would interpret that plane as not being used within the meaning of the definition of industrial aid?

A. If the charge is still made, it would be immaterial.''

Walter L. Weber, a witness for complainant testified:

''Q. Without going over all the questions we asked Mr. Craig, state whether or not there is an accepted definition of the term, renter pilot in the area of aviation and aviation insurance?

\* \* \* \* \* \*

A. In my opinion, the definition—

Q. First, is there a generally accepted definition and meaning of that term?

A. Yes, in that a renter pilot is a person who has a pilot's license and goes and rents an aircraft, if from a fixed base operator or an individual to pilot the airplane for him.

Q. An individual who both leases and flies?

A. Right.

THE COURT: Is that the individual who rents the plane? Is that what you're saying?

WITNESS: Yes, sir.

\* \* \* \* \* \*

Q. (By Mr. Cummings) Assuming, Mr. Weber, the ownership of this aircraft by Mr. Abernathy, the

use of the aircraft by Mr. Abernathy in his business, and for pleasure, the rental of the aircraft by an hour rate, or on an hourly rate to the Ferro Corporation, the use by the Ferro Corporation under its lease in its business, not a rental to the general public or to anyone else, these facts known to the Pacific Indemnity state whether or not that would fall within the usage defined as industrial aid in this policy from a rating standpoint.

A. From a rating standpoint, it would fall within the term, industrial aid.''

C. W. Houston, a witness for the defendant, testified:

''Q. All right, sir. Now, let me ask you this, Mr. Houston. Insofar as you know, has there ever been a judicial interpretation of the word, renter pilot?

A. Not to my knowledge.

\* \* \* \* \* \* .

Q. Have you ever seen prior to this accident any under—anyone undertaking to define renter pilot in any of those policies?

A. I can't say that I have.

Q. You have never seen it defined until after this accident occurred?

A. Well, that would be correct also.

\* \* \* \* \* \*

Q. (By Mr. Herod) Do you all consider there to be a difference for rating purposes between an aircraft that is under lease such as the one that existed between Ferro and Abernathy when you added Ferro

to this policy and the rental of an airplane on a per-trip basis?

A. We do make a distinction and there is a premium difference and it has other underwriting significance attached to it as well.

\*　　\*　　\*　　\*　　\*　　\*

Q. Once that lease did not exist and you knew that it did not exist, would it be used in accordance with the industrial aid provision of the policy if it was leased on a per-trip basis to Ferro?

A. No, it would not.

\*　　\*　　\*　　\*　　\*　　\*

Q. (By Mr. Cummings) And if the use of the aircraft following this letter of February 8 to you was identical to what it was before the letter was written then the rating classification was the same, that is, industrial aid, was it not?

A. Well, it would have been if those were the facts.

\*　　\*　　\*　　\*　　\*　　\*

Q. Do you consider it a greater risk when a plane is leased or rented or whatever you want to call it for hire on a per-trip basis than there is when there is a lease between the parties and particularly between the two named insured?

A. Yes, there is much more exposure.

Q. Is that based upon experience?

A. Yes.''

Complainant insists that the use of the aircraft under the first written lease and the subsequent oral rental arrangement was identical, that is, that Ferro employed the aircraft for the same purposes and by the same operating personnel under both oral and written agreements. This insistence is correct, insofar as the actions of Ferro are concerned. This insistence is not correct insofar as the *possible* uses by Abernathy were concerned.

Under the written lease, Ferro had *first call* upon the use of the aircraft. No one could use it, not even Abernathy, except at a time when Ferro did not need it. Thus under the first, written, agreement Ferro had the principal right of possession and use.

Under the second, oral agreement, Ferro's use of the aircraft was whenever it was available. That is, Ferro's right of possession and use was secondary and subject to use by others.

Even under the first, written arrangement, it was deemed necessary to have Ferro listed on the policy as a named insured, and $100.00 expense was incurred for this purpose. It is doubtful that so much trouble and expense would have been incurred if the parties had been satisfied of Ferro's rights as an additional unnamed insured. It is true that Ferro was fearful that the policy might be cancelled without notice to Ferro, but this does not fully explain the inclusion of Ferro as a named insured.

██ Complainant points out, correctly, that the words "industrial aid" as defined in the policy include the use to which Ferro was applying the aircraft at the time of its destruction. But the words "industrial aid" contemplate such use in its own business by a *named insured*.

So long as Ferro remained a named insured, its use of the aircraft in its own business was "industrial aid." However, when Ferro ceased to be a named insured, then Abernathy remained the only named insured. In this situation, when Abernathy rented the aircraft to Ferro for use in Ferro's business, then Abernathy, the named insured was *not* using the aircraft for "industrial aid," but was using it for rental purposes whereby it was used by and for the benefit of others than the named insured.

Therefore, under the policy conditions in existence the aircraft was not being used for "industrial aid" by an insured, and the use was in violation of the representations attached to the policy.

Complainant urges that if, as insisted by defendants, there was no difference in premium whether the policy named Abernathy alone or both Abernathy and Ferro, then it would be unjust to relieve defendants of liability to Ferro without a reduction of premium or other consideration. Complainant insists that the decree of the chancellor gives defendants a liability-free windfall, free of charge. This insistence appeals to the sense of equity and justice, but it overlooks the fact that the "windfall" was presented to defendants by Ferro itself when it wrote the letter of February 8, 1967 and returned its copy of the policy.

Section 24-706, T.C.A., provides as follows:

"24-706. *Receipts and releases.*—All receipts, releases, and discharges in writing, whether of a debt of record or a contract under seal, or otherwise, shall have effect according to the intention of the parties thereto."

Under this section, a written release of an obligation is valid without consideration. First Nat. Bank of Nashville v. Shook, 100 Tenn. 436, 45 S.W. 338 (1898).

Therefore, when Ferro returned its copy of the policy and authorized cancellation, the rights of Ferro thereunder were terminated, however improvident the action might appear in the light of subsequent events.

The third assignment of error is respectfully overruled.

The fourth assignment of error is as follows:

"The Court erred in declaring that appellant has no rights under the contract of insurance and is not covered and protected by the terms and provisions of said insurance policy for claims and suits resulting from the crash of February 22, 1967 (Tr. p. 30)."

This assignment calls for a de novo review of all of the facts and law to determine the correctness of the conclusion reached by the chancellor, Sec. 27-303, T.C.A.

Such a review has been made, indulging the statutory presumption of the correctness of the chancellor's decree. The evidence does not preponderate otherwise, and no errors of law have been found. Therefore, the fourth assignment of error is respectfully overruled.

The decree of the chancellor is affirmed. The costs of this appeal are taxed against the complainant-appellant.

Affirmed.

Shriver, P. J. (M.S.), and Puryear, J., concur.