The JEFFERSON INSURANCE
COMPANY OF NEW YORK,
Plaintiff/Appellant,

v.

Michael CURLE and Steven Shelley, Individually, and d/b/a C & S Roofing, A Partnership, Defendants/Appellees,

Dennis Whitsett and Wife, Karen Whitsett, Intervening Defendants/Appellees.

Court of Appeals of Tennessee,
Western Section, at Jackson.

Jan. 19, 1989.

Permission to Appeal Denied by
Supreme Court May 1, 1989.

Robert D. Flynn, S. Newton Anderson, Spicer, Ridolphi, Flynn & Rudstrom, Memphis, for plaintiff/appellant.

Joseph Michael Cook, Memphis, for intervening defendants/appellees.

Ed Hurley, Memphis, for defendants/appellees.

McLEMORE, Special Judge.

Jefferson Insurance Company brought this action in the Circuit Court for Shelby County for a declaration of its liability on a general liability insurance policy issued to C & S Roofing. Michael Curle and Steven Shelley were partners doing business under that name. Dennis Whitsett and wife, Karen Whitsett, were allowed to intervene. The trial court found the policy cancelled as to Steven Shelley, individually, but in full force and effect as to C & S Roofing, a partnership, and Michael Curle, individually. Jefferson Insurance Company has appealed and we reverse.

Shelley and Curle formed C & S Roofing, a partnership. Jefferson Insurance Company issued the partnership a general liability insurance policy number L172711 effective February 7, 1984 through February 7, 1985. In May, 1984, the partnership dissolved. Curle agreed to finish at least one unfinished project (the Bishop job) and left Shelley to wind up the other partnership affairs. On June 11, 1984, Shelley signed a "Cancellation Request/Policy Release" as to policy number L172711 with Jefferson Insurance, effective May 29, 1984. Shelley then collected the unused premiums amounting to 59+% of the annual premiums as shown on Trial Exhibit 2. On or about June 20, 1984, Dennis Whitsett, a painting sub-contractor, performed work at one of the partnership's previous residential projects (the Bishop job). While working on the roof, Whitsett fell through a hole the partnership allegedly covered with tar paper and/or felt. He sustained various personal injuries. Whitsett filed suit against, *inter alia*, Shelley and Curle, individually, and C & S Roofing. Shelley and Curle and the partnership made a demand for Jefferson Insurance to provide a defense under the policy. Jefferson Insurance agreed, however, under a full reservation of rights. Jefferson Insurance then filed this action for a declaration of its liability under the policy contending that the policy was totally cancelled.

## I. CANCELLATION OF POLICY.

Since the policy was not surrendered to the company and no notice was mailed in the cancellation process the intervening defendants contend that the cancellation of the policy by Shelley was not in compliance with the policy and was therefore ineffective. The cancellation clause is as follows:

11. Cancellation: This policy may be cancelled by the named insured by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the named insured at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

The quoted policy language is clearly permissive in nature and does not restrict the use of other methods of cancellation that are sufficient to carry out the mutual intent of the parties. The appellees cite the case of *State Automobile Mutual Insurance Company v. Lloyd*, 54 Tenn.App. 587, 393 S.W.2d 17 (1965), cert. den'd., for the proposition that strict compliance with policy cancellation provisions must be met prior to effective cancellation. That case involved the *insurance company's* attempted cancellation of an automobile policy, unlike the facts in the instant case where the cancellation was by the insured. Where the insurance company cancels,

strict compliance is required "because the cancellation right and requirement of notice of such cancellation is for the benefit of the insured to give the insured time to obtain other insurance or protection." *Id.*, 393 S.W.2d at 26.

■ Curle and the intervenors in their brief contend Shelley lacked authority to cancel the partnership's insurance policy. In support of this contention, they cite a rule as set forth in *Couch on Insurance:* "A partner, subsequent to the dissolution of a partnership, cannot consent to the cancellation of a policy on partnership property so as to bind the remaining partner to whom no notice was given where the insurer had knowledge of the dissolution." *Couch on Insurance Second* § 67:82 (1983) (citing *Atlas Assur. Co. v. Cotter*, 226 Ky. 554, 11 S.W.2d 427 (1928)). That Curle had no knowledge Shelley was cancelling the policy is undisputed. Furthermore, that Jefferson Insurance had knowledge the partnership had dissolved is undisputed. However, we find that if the rule was ever applicable in this state the adoption of the Uniform Partnership Act abrogated the rule in Tennessee.

T.C.A. § 61–1–134(a)(1) clearly states:

(a) After dissolution a partner can bind the partnership except as provided in subsection (c):

(1) by any act appropriate for winding up partnership affairs or completing transactions unfinished at dissolution.

We note the facts of this case do not fit within any exception enumerated in subsection (c).

■ Furthermore, T.C.A. § 61–1–136 states:

Unless otherwise agreed the partners who have not wrongfully dissolved the partnership or the legal representative of the last surviving partner, not bankrupt, has the *right* to wind up the partnership affairs; provided, however, that any partner, his legal representative, or his assignee, upon cause shown, may obtain winding up by the court. [Emphasis added]

As the record reflects no evidence Shelley wrongfully dissolved the partnership, he not only had the authority but the right to wind up the partnership's affairs. In wind-

ing up partnership affairs, the liquidating partner has all the power necessary for final settlement of partnership affairs. *Partnership*, 59 Am.Jur. § 1109. In winding up partnership affairs, the liquidating partner owes a continuing fiduciary duty to the other partners, *Id.*, and has an obligation to act equitably toward them. *Id.*, § 934. However, these obligations run between partners and do not absolve any partner from being bound by the liquidating partner's actions in winding up partnership affairs. In the present case, we hold Shelley's cancellation of the partnership insurance policy and collection of unused premiums to be within his authority in winding up the partnership's affairs.

## II. SEVERABILITY OF POLICY.

The trial court found the policy in the present case provided coverage for Shelley, individually; Curle, individually; and C & S Roofing as a partnership. Based upon this finding, the trial court held the policy severable and cancelled only as to Shelley, individually.

To support this action by the trial court the appellees rely upon the case of *Ferro Corporation v. Aviation Insurance Managers, Inc.*, 62 Tenn.App. 339, 462 S.W.2d 523 (1970), cert. den'd. 1971. In *Ferro Corporation* the two involved parties had the relationship of lessor and lessee, the lessor had initially purchased a policy of insurance and the lessee (Ferro) was subsequently added through an endorsement naming it as an additional insured. The lessor and lessee subsequently altered their lease agreement and a request by Ferro cancelling the endorsement, naming Ferro Corporation as an additional insured was submitted to the insurance company. Under these facts, the court held that the coverage afforded to the two insureds was severable and upheld Ferro Corporation's cancellation. In the instant case, however, the facts are vastly different.

■ In the instant case Jefferson Insurance Company attached a copy of the policy to its complaint for declaratory judgment and introduced it into evidence. The declarations page states the named insured as:

C & S Roofing
5955 Steeplechase
Bartlett, Tennessee 38134

The declarations page also contains numerous boxes under the heading "The named insured is." The policy in question is marked:

> The named insured is:
>
> } Individual        }} Partnership

The policy defines "persons insured" as follows:

> Each of the following is an insured under this insurance to the extent set forth below:
>
> (b) If the named insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof *but only with respect to his liability as such.* [Emphasis added]

This policy is not ambiguous, nor severable. Jefferson Insurance Company issued a partnership policy. The policy provided coverage to the individual partners only in their capacity as partners. When Shelley cancelled the partnership insurance, any coverage applicable to Curle and Shelley, individually, ceased. We are therefore of the opinion the preponderance of the evidence does not support the trial court's findings.

For the foregoing reasons, the judgment of the trial court holding the policy cancelled as to Steven Shelley, individually, is affirmed, but that portion of the judgment holding that the policy is in full force and effect as to C & S Roofing, a partnership, and Michael Curle, individually, is reversed; and we hold that the policy is cancelled as to all insureds and, thus, provides no coverage to any of the defendants for the accident alleged by Dennis Whitsett to have taken place on June 20, 1984. Costs on this appeal are taxed one-half to the intervenors and one-half to other appellees, for which execution may issue if necessary.

HIGHERS and FARMER, JJ., concur.