IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

November 16, 2004 Session

# CERTAIN UNDERWRITERS AT LLOYDS, LONDON v. TED M. WINESTONE; J.B. MCDONALD & CO.; LEONARD E. FRANKLIN; and GUARANTY NATIONAL INSURANCE COMPANY.

# TED M. WINESTONE and J.B. MCDONALD & CO., V. REGIONS MORTGAGE, INC., GEORGE HOLLEY INSURANCE AGENCY, INC. and AL HOLLINGSWORTH

### An Appeal from the Circuit Court for Shelby County
### CT-006472-00    Karen R. Williams, Judge

---

### No. W2003-03025-COA-R3-CV - Filed July 13, 2005

---

This is a casualty insurance case. A bank had a mortgage on residential property. The homeowner stopped making payments on the mortgage, abandoned the property, and allowed the homeowner's insurance coverage on the property to lapse. The bank, in order to protect its interest in the property, purchased insurance coverage on behalf of the homeowner. The bank later sold the mortgage to a third party and cancelled the insurance coverage. The new mortgagee purchased insurance coverage for the property. Shortly thereafter, the property burned, resulting in a total loss. The new mortgagee's insurance company filed the instant lawsuit, asking for a declaratory judgment that the prior insurance policy was still effect at the time of the fire. The trial court held that the prior policy was not in effect at the time of the fire. The new insurance company appealed, arguing that, in the course of the purchase, the prior insurance coverage had transferred to the new mortgagee as assignee of the prior mortgage holder, and that the bank's cancellation of the prior insurance policy was ineffective. We affirm, finding that the prior insurance coverage was not transferred to the new mortgage holder and that the prior insurance policy was not in effect at the time of the fire.

### Tenn. R. App. P. 3 Appeal as of Right; the Judgment of the Circuit Court is Affirmed

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Allan B. Thorp, Memphis, for plaintiff/appellant, Certain Underwriters at Lloyds, London.

Eugene G. Douglass, Bartlett, and Alvin A. Gordon, Memphis, for defendant/counter-plaintiff and third party plaintiff/appellee Ted M. Winestone and J.B. McDonald & Co.

Michael B. Neal, Memphis, for appellee Guaranty National Insurance Company.

**OPINION**

In July 1993, Leonard Franklin ("Franklin") purchased a house and lot located in Memphis, Tennessee. In the course of the purchase, Franklin executed a deed of trust and a promissory note in the amount of $400,000 to Regions Mortgage, Inc. ("Regions Mortgage"), located in Birmingham, Alabama. The deed of trust required Franklin to maintain casualty insurance to protect against fire loss to the property. Franklin purchased a policy with State Auto Insurance Company.

During the summer of 1999, Franklin became delinquent on his mortgage payments. In December 1999, Regions Mortgage inspected the property and learned that it was vacant and not listed for sale. After contacting State Auto Insurance Company, Regions Mortgage learned that Franklin's policy had been cancelled on September 22, 1999.

At that time, Regions Mortgage had a master policy issued by Guaranty National Insurance Corporation ("Guaranty National") that provided "forced place" insurance to Regions Mortgage on behalf of Region Mortgage's customers who could not or did not properly insure property for which Regions Mortgage was mortgagee.[1] Cason Financial, Inc. ("Cason") was the insurance agent for the Guaranty National policy, and it was administered by Overby-Seawell Company ("Overby-Seawell"). On February 8, 2000, Guaranty National issued a certificate of coverage regarding the Franklin property. On the "Declarations" page, Franklin was listed as the insured mortgagor and Regions Mortgage, Inc., Its Successors and/or Assigns was listed as the insured mortgagee. The coverage was issued for one year and was made retroactively effective from September 22, 1999, the date that Franklin's coverage through State Auto Insurance Company lapsed. Regions Mortgage paid a full year premium on this policy of $3,696.95. Under the terms of the policy, Regions Mortgage had the right to cancel coverage retroactively. The policy stated:

> The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation. *You may also cancel coverage on any Mortgagor's Certificate of Insurance which has been issued by notifying us of the desired effective date of cancellation*, but not prior to the effective date of mortgagor provided insurance which meets the requirements of your

---

[1] "Forced place" insurance is a policy purchased by a mortgagee (i.e. Regions Mortgage) on behalf of a mortgagor (i.e. Franklin) when the mortgagor's policy lapses for whatever reason. This term is sometimes shown as "force placed" or "forced-place." We used the term "forced place" because it appeared to be the most prevalent.

loan agreement, and *no more than 60 days prior to the date of notification to us*, without approval of the company. (emphasis added)

Additionally, the Declarations page stated "this coverage is not transferable without written permission by endorsement hereon by [Guaranty National]."

By January 2000, Regions Mortgage determined that Franklin would not cure the default status of his mortgage. Regions Mortgage referred the matter to Stanley Weir ("Weir") of Regions Financial Corp. ("Regions Financial") to determine the appropriate action, which could include foreclosure. Regions Financial determined that Regions Mortgage should simply sell the mortgage and the deed securing it. As a result, Regions Mortgage began negotiating to sell the mortgage to J.B. McDonald & Co. ("McDonald"), a corporation fully owned by Ted Winestone ("Winestone"). The deed of trust was to be assigned to McDonald, who would in turn assign the mortgage and deed of trust to Winestone.

On March 21, 2000, in anticipation of purchasing the mortgage on the Franklin property, Winestone wrote checks to George Holley Insurance Company ("Holley Insurance") for the purpose of obtaining a casualty insurance policy on the Franklin property. Winestone alleged that he requested a mortgagee's policy from Holley Insurance. Holley Insurance purchased insurance on Winestone's behalf from Certain Underwriters at Lloyd's, London ("Lloyd's"). The Lloyd's policy had an "other insurance provision" that allowed Lloyd's to offset any losses against certain other insurance coverage. The provision read:

> If there is other insurance covering the same loss or damage, other than described in No. 1 above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable limit of coverage.

The new Lloyd's insurance policy was to become effective on March 21, 2000.

The closing on the sale of the mortgage from Regions Mortgage to McDonald (owned by Winestone) was scheduled for March 17, 2000. Immediately prior to the closing, Weir, with Regions Financial, sent Winestone a letter dated March 17, 2000, that stated: "As we discussed, once we have received recordation confirmation of the Assignment, we will cancel the forced place insurance coverage on the property. As I am sure you are aware, the insurance only covers Regions [Mortgage] for any loss that may occur."

The closing on the transfer of the mortgage from Regions Mortgage to McDonald and Winestone took place on March 17, 2000. At that time, the balance owed to Regions Mortgage was approximately $390,000. Winestone paid Regions Mortgage $345,000 in exchange for the mortgage and the deed of trust.

After the closing, on March 20, 2000, Regions Mortgage directed its accounting department to write off the balance owed on the Franklin property. Consequently, the Franklin account was noted on the books of Regions Mortgage as "paid-off."

Thereafter, in March 2000, Regions Mortgage, by electronic transmission, contacted the administrator of the Guaranty National policy, Overby-Seawell, requesting cancellation of the policy covering the Franklin property. The transmission included the notation, "WAIVE-paid-off." It was entered on Overby-Seawell's system on 3/28/00, to be retroactively effective on 3/22/00. Overby-Seawell viewed this electronic transmission, with the "WAIVE-paid-off" notation, as notice to cancel the insurance coverage on the Franklin property. However, for reasons not clear in the record, the Guaranty National policy was not actually cancelled at that time. In the meantime, in late March 2000, Winestone began foreclosure proceedings on the Franklin property.

On April 1, 2000, the Franklin property was totally destroyed by fire. Several days later, Winestone received a copy of the insurance policy from Lloyd's and discovered that the policy that had been issued was an owner's policy rather than a mortgagee's policy. On April 6, 2000, Winestone gave notice to Lloyd's that the Franklin property had burned. On April 18, 2000, Winestone foreclosed on the property; Winestone and his wife purchased the property at the foreclosure sale.

On May 15, 2000, Overby-Seawall, administrator for the Guaranty National policy, received an additional notification of cancellation on the Franklin policy from Regions Mortgage. This notification from Regions Mortgage, a cancellation log sheet, requested a retroactive cancellation date for the Guaranty National policy of 3/22/2000. The coverage under the Guaranty National insurance policy was then finally cancelled on the Overby-Seawall system on May 15, 2000, and the cancellation was made retroactively effective as of March 22, 2000. Based on a cancellation date of March 22, 2000, Overby-Seawall calculated the amount of unused premium to be $1,854.65. This amount was refunded to Regions Mortgage, which applied it to Franklin's outstanding balance. Thus, Regions Mortgage's forced place insurance coverage with Guaranty National terminated with an effective date shortly after Regions Mortgage sold its interest in the property. Franklin was not notified of the cancellation of the Guaranty National policy.

On November 3, 2000, Lloyd's filed a Complaint for Declaratory Judgment ("Complaint") naming Winestone, McDonald, Franklin, and Guaranty National as defendants. The lawsuit asked the trial court to determine Lloyd's duties and responsibilities under the policy. In the complaint, Lloyd's asserted that the casualty insurance policy issued by Guaranty National was in full force and effect at the time the Franklin property burned, making the "other insurance" provision of the Lloyd's policy applicable.

In December 2000, in its answer to the complaint, Guaranty National asserted that its policy did not cover the loss of the Franklin property because Regions Mortgage cancelled the policy on March 22, 2000, before the loss on the Franklin property occurred. Guaranty National also asserted that it was not liable under the policy because, at the time of the loss, its insured, Regions Mortgage,

no longer had an insurable interest in that property. Later, after the parties engaged in discovery, Guaranty National filed a motion for summary judgment, asserting that the dispute in this case was between Lloyd's and Winestone regarding the loss of the Franklin property and that Guaranty National was not involved. Guaranty National maintained that no party had made a claim against it and no party had a right to make a claim against it. As a result, Guaranty National sought to be dismissed from the action.

In response to Lloyd's lawsuit, Winestone and McDonald filed a third-party complaint against Regions Mortgage, alleging, *inter alia*, that if Regions Mortgage failed to cancel its forced place insurance coverage, thereby enabling Lloyd's to invoke the "other insurance" clause in the Lloyd's policy, then Regions Mortgage was liable to Winestone for negligence. The third-party complaint also included a claim against Holley Insurance, asserting that if the Lloyd's policy was held invalid because it was an owner's policy rather than an mortgagee's policy as requested by Winestone, then Holley Insurance was liable for negligence for not procuring the proper type of insurance. The response by Winestone and McDonald included a counterclaim as well, asking the trial court to find that the Lloyd's policy provided coverage for the loss incurred at the Franklin property.[2]

On January 17, 2003, Lloyd's filed a motion for partial summary judgment against Guaranty National, asserting that Guaranty National's policy was never effectively cancelled. Lloyd's asked the court to declare that Guaranty National's casualty insurance policy was in full force and effect on April 1, 2000, the date of the fire loss on the Franklin property. On July 8, 2003, Lloyd's moved to amend its complaint, seeking to clarify that it had a claim against Guaranty National. Lloyd's asserted that it was entitled to contribution or indemnification from Guaranty National as a result of the Guaranty National policy. Lloyd's also sought partial summary judgment based on Winestone's purchase of the property at foreclosure, asserting that, by personally purchasing the Franklin property at foreclosure, Winestone partially extinguished the outstanding debt remaining on the promissory note, thus reducing any amount owed by Lloyd's to Winestone as mortgagee.

In September 2003, Guaranty National filed a motion to dismiss and for summary judgment, asserting that Lloyd's was time-barred. In the motion, Guaranty National stated that any claim against it arising from the fire loss on the Franklin property should have been filed within two years of the loss, as required by its policy. As a result, Guaranty National asserted that the Lloyd's claim was barred by the time limit in its policy. In addition, Guaranty National reiterated its argument that Regions Mortgage had no insurable interest in the property at the time of the loss and thus Guaranty National was not responsible for the loss. Guaranty National also argued that Lloyd's "other insurance" provision was not applicable. Guaranty National noted that, if an insurer seeks to offset its losses through an "other insurance" provision, the other insurance must cover the "same loss" or "same damage." In this case, Guaranty National maintained, the "same loss" would refer to a loss suffered by Winestone and insured by Lloyd's. Guaranty National then argued that claims for indemnification through the "other insurance" clause should be limited to policies owned by

---

[2]The appellate record does not include a response from Franklin.

Winestone. Guaranty National noted that Winestone was not an insured under the Guaranty National policy and thus the Guaranty National policy was not "other insurance" under the provisions of the Lloyd's policy.

The trial court allowed Lloyd's to amend its complaint to assert a claim against Guaranty National. It went on, however, to grant Guaranty National's motion for summary judgment and motion to dismiss. The trial court found:

> 1.) that as of April 1, 2000 Regions Mortgage had no insurable interest in the Leonard Franklin property, 2.) that the insurance afforded with respect to the property of Leonard Franklin by Guaranty National was not in effect as of April 1, 2000, 3.) that Guaranty National provided no insurance with respect to the loss allegedly suffered by Ted Winestone on April 1, 2000 and 4.) that the interests insured by the [Lloyd's] policy were different from the interest insured by the Guaranty National policy and therefore the Guaranty National policy would afford no insurance coverage to Ted Winestone and 5.) the Guaranty National policy is not "other insurance" within the meaning of the "other insurance" clause of the [Lloyd's] policy.

Based on these findings, the trial court denied Lloyd's request for a declaration that the Guaranty National policy was in effect as of the date of the fire loss, and granted Guaranty National's motion for summary judgment and to dismiss. Pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, the judgment entered in favor of Guaranty National and Franklin was made final. The trial court noted that the action remained pending as to all other claims. From this order, Lloyd's now appeals.

On appeal, Lloyd's argues that the trial court erred in granting summary judgment to Guaranty National because Winestone had been assigned the Guaranty National policy and because the policy had never been effectively cancelled. Lloyd's also asserts that the amended complaint was not barred by the two year limitation period noted in the Guaranty National policy because the second complaint did not allege new facts; rather, it alleged a more specific prayer for relief.

A motion for summary judgment should be granted only when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgment is appropriate only when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

On appeal, Lloyd's first argues that Winestone was an assignee of Regions Mortgage and was therefore covered by the Guaranty National policy. Lloyd's notes that the Declarations page in the Guaranty National policy named the mortgage holder (Regions Mortgage) and its assigns as the

insured. Lloyd's then asserts that Winestone is such an assignee under the terms of the Guaranty National policy. However, the Declarations page of the Guaranty National Policy clearly states that coverage is not transferrable without written permission. An insurance company may refuse to honor an assignment made without its permission. ***Hobbs v. Memphis Ins. Co.***, 33 Tenn. 444 (1853); ***Quarles v. Clayton***, 10 S.W. 505, 507 (Tenn. 1889); ***Mutual Protection Fire Ins. Co. v. Hamilton & Gorham***, 37 Tenn. 269 (1857). The record contains no indication that Guaranty National agreed to the assignment of its policy to either McDonald or Winestone. This argument must be rejected.

Lloyd's also argues that Guaranty could not retroactively cancel its coverage through an internal computer entry and without written notice. Lloyd then cites a portion of the Guaranty policy that states:

> Cancellation:
>
> b. **We** may cancel this **policy** or any **Mortgagor's Certificate of Insurance** by mailing or delivering to the first **Named Insured** written notice of cancellation at least:
> (1) 10 days before the effective date of cancellation if **we** cancel for nonpayment of premium; or
> (2) 30 days before the effective date of cancellation if **we** cancel for any other reason
> c. Other Termination Provision
> (1) **We** will also mail or deliver to any mortgage holder, pledgee or other person shown in this **policy** to have an interest in any loss which may occur under this **policy** or any **Mortgagor's Certificate of Insurance**, at their last mailing address known to us, written notice of cancellation, prior to the effective date of cancellation. **Our** notice will be the same as that mailed or delivered to the first **Named Insured**. (emphasis in original.)

Lloyd's then cites ***Jefferson Ins. Co. v. Curle***, 771 S.W.2d 424, 425-26 (Tenn. Ct. App. 1989) for the proposition that, for cancellation of an insurance policy to be effective, Tennessee courts require an insurer to strictly comply with its own cancellation policy. Based on this theory, Lloyd's asserts that Guaranty National's failure to follow the notice provisions in the cancellation policy shown above resulted in the Guaranty National policy remaining in effect. The principle noted in ***Jefferson***, however, is inapplicable. Certainly, when cancellation of insurance coverage is instigated by the insurer, strict compliance with the notice requirements is necessary to allow the insured to obtain other coverage. ***Id.*** at 426. However, in the instant case, as in ***Jefferson***, cancellation of the policy was sought by the *insured,* Regions Mortgage; notice to Regions Mortgage would not be necessary for effective cancellation. Lloyd's, of course, was not a named insured, nor was it an assignee under the policy, as noted above. As such, it was not entitled to any notice pursuant to the policy provisions cited above.

Moreover, the policy language cited above clearly permits Regions Mortgage to cancel the policy retroactively, so long as the notification to Guaranty National was within 60 days of the

requested cancellation date. Whether Regions Mortgage's cancellation was made on 3/28/2000, by electronic transmission, or by the written cancellation on 5/15/2000, the cancellation was still within the 60-day time limit to retroactively cancel the policy effective 3/22/2000. Under all of these circumstances, we find no error in the trial court's conclusion that the Guaranty National policy on the Franklin property was not in effect on the date of the fire loss, 4/1/2000.

Lloyd's final argument on appeal is that the trial court erred in granting Guaranty National's motion to dismiss the amended complaint, which more clearly asserted their request for contribution or indemnification. However, our holding above that Winestone and/or McDonald were not valid assignees of the policy and that the policy was effectively cancelled before the fire loss occurred, pretermits Lloyd's final argument, since a specific request for contribution and indemnification would not affect the outcome of this appeal.

The decision of the trial court is affirmed. Costs of this appeal are taxed to the appellant, Certain Underwriters at Lloyd's, London, and its surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE